BIG RIVER LEAD COMPANY, Respondent, v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, March 5, 1907.

1. **RAILROADS: Fires: Sparks From Engines: Evidence.** In an action against a railroad company for damage on account of the destruction of plaintiff's barn by a fire set by sparks from defendant's passing engine, the testimony of witnesses that other locomotives of the defendant had emitted sparks which fell at a distance from the defendant's track further than the plaintiff's barn, was admissible on the theory that there is usually a uniformity of plan in the construction of locomotives used by a railway company and that if some emit cinders, presumably the others do.

2. ———: ———: ———: **Prima Facie Case.** In such an action, where the evidence showed the weather was dry, the wind blowing from the railroad towards the barn, that the track at that point was nearly on a level with the eaves of the barn, that a heavy grade begins before the point is reached, that three trains had passed within a short time before the fire was discovered, the last within a few minutes, that sparks from defendant's engines at that point on other occasions had risen from twenty to forty feet in the air and had fallen, burning, further away than plaintiff's barn which was two hundred and twenty-three feet distant, and there was no evidence tending to show any other possible origin of the fire, that the fire began on the outside of the barn roof, this was sufficient to make out a prima facie case for the jury. The evidence was such that a reasonable mind could have reached the conclusion that the fire was caused by the sparks.

3. ———: ———: ———: ———. A number of cases from various States are reviewed as to what evidence is necessary to make out a prima facie case for the jury in an action against a railroad company for damage caused by fire.

4. **PRACTICE: Instruction: Referring to Petition.** In an action for damages caused by the burning of various articles by the defendant's negligence, an instruction is not erroneous on account of referring to the property mentioned in the petition.

5. ———: ———: ———. Where the petition in such case set out the value of the different articles destroyed, an instruction which authorized the jury if it found for plaintiff to render

a verdict for the value of the property destroyed, not exceeding
the aggregate amount of all the articles, was not erroneous:
it was not necessary that the verdict should set out the value of
each article.

Appeal from Jefferson Circuit Court.—*Hon. Joseph J.
Williams*, Judge.

AFFIRMED.

*Martin L. Clardy* and *James F. Green* for appellant.

(1)   There was not sufficient evidence to establish
the fact that the fire was communicated from defend-
ant's engines, and the court should have so instructed
the jury.   Gibbs v. Railroad, 104 Mo. App. 276; Wright
v. Railroad, 107 Mo. App. 209; Peffer v. Railroad, 98
Mo. App. 291; Fields v. Railroad, 113 Mo. App. 642;
Bank v. Railroad, 98 Mo. App. 330; Peck v. Railroad,
31 Mo. App. 123; Moore v. Railroad, 28 Mo. App. 622.
(2)   Where there is no direct evidence to prove the ulti-
mate fact essential to recovery, the facts proven must
point strongly to the existence of such fact necessary
to be established.   Hess v. Railroad, 36 Mo. App. 163;
Perkins v. Railroad, 103 Mo. 52; Yeager v. Railroad,
61 Mo. App. 592.   (3)   A verdict based upon mere con-
jecture will not be permitted to stand.   Shore v. Bridge
Co., 111 Mo. App. 278; Bank v. Railroad, 98 Mo. App.
336; Smart v. Kansas City, 91 Mo. App. 592; Warner
v. Railroad, 178 Mo. 134; Epperson v. Railroad, 155 Mo.
382; Root v. Railroad, 92 S. W. 627; Glick v. Railroad,
57 Mo. App. 97.   (4)   Plaintiff's first instruction is
erroneous in that it refers the jury to the petition to
ascertain the issues submitted.   McGinnis v. Railroad,
21 Mo. App. 413; Remler v. Shenuit, 15 Mo. App. 196;
Proctor v. Loomis, 35 Mo. App. 488; Allen v. Transit
Co., 183 Mo. 411; Kohn v. Railroad, 92 S. W. 1144.
(5)   The court erred in admitting evidence as to other
claims against defendant, and as to other fires.   Gobel

v. Kansas City, 148 Mo. 475; Coale v. Railroad, 60 Mo. 227; Patton v. Railroad, 87 Mo. 117; Lester v. Railroad, 60 Mo. 265.

*Byrns & Bean* and *H. B. Irwin* for respondent.

(1) In passing on a demurrer to the evidence, not only the truth of the facts shown, but every inference of fact, which the evidence warrants, and which the jury with propriety might make, must be made in favor of plaintiff. Gannon v. Gas Co., 145 Mo. 516; Twohey v. Fruin, 96 Mo. 109. (2) There was ample testimony on which to submit the case to the jury. Field v. Railroad, 113 Mo. App. 644; Holland v. Railroad, 13 Mo. App. 585; Torpey v. Railroad, 64 Mo. 382. (3) The court properly admitted the testimony of the witnesses showing how sparks of fire were thrown by defendant's engines, both before and after the time of the fire in question. Campbell v. Railroad, 121 Mo. 340; Gibbs v. Railroad, 104 Mo. App. 276. (4) The train sheet, kept by defendant, showing the time its trains passed Irondale on the night of the fire, was competent as an admission of defendant. 1 Greenleaf on Evidence (15 Ed.), p. 274, par. 198; Railroad v. Daniel, 3 L. R. A. 1193.

GOODE, J.—Plaintiff, an incorporated company, suffered a loss by fire November 21, 1903, and seeks compensation from the defendant on an averment that the fire was kindled by sparks emitted by one of defendant's locomotives. According to the statement of the petition, the property burned was one barn of the value of $2,000, another barn of the value of $1,000, four mares worth $650, two mules worth $300, two thousand bushels of corn worth $900, one hundred and twenty-five tons of hay worth $1,250, five hundred sacks worth $25, one thousand pounds of mixed feed, worth $900, four hundred bushels of oats worth $120, five sets of harness, worth $75, farm machinery worth $100 and a hog pen,

worth $50. The fire started after midnight and before two o'clock in the morning. One witness observed it at five minutes before two o'clock. It caught in the roof of the larger of the two barns, which is situate two hundred and twenty-three feet from defendant's railroad. The different properties described in the petition were all consumed by the fire and evidence was put in to prove they were of the values alleged. Three trains passed Irondale, the station where the fire occurred, on the night of its occurrence after midnight and prior to the discovery of the fire; but the engineers and firemen of the locomotives which drew those trains swore no sparks were thrown out by either of the engines while traveling along the Irondale grade. This grade is quite heavy. It begins to rise one mile and a quarter north of the station and continues to ascend toward the south for six miles. The effect of the grade is to increase the difficulty of drawing trains over the track and to draw them a strong head of steam is worked, causing the engine to throw coals and sparks to a considerable distance. Some witnesses said they had seen sparks from other locomotives fall further from the track than plaintiff's barns were. An exception was saved to the admission of this testimony, as it related to other times than the night of the fire and the sparks were not shown to have been emitted by the engines which passed Irondale on said night. This point must be ruled against the defendant on the authority of Campbell v. Railroad, 121 Mo. 340, 349, 25 S. W. 936, and Mathews v. Railroad, 142 Mo. 645, 657, 44 S. W. 802. It is competent in actions like this to show the railroad company's locomotives had thrown out sparks and cinders which fell farther from the track than the burned property, and also that fires were started on other occasions by falling sparks at a greater distance than this plaintiff's property was. The reason for admitting such evidence was stated in Sheldon v. Railroad, 14 N. Y. 223, an author-

ity cited with approval in the foregoing decisions of our Supreme Court. The reason is that there is usually a uniformity of plan and construction in locomotives used by a railway company, so that if some of them emit cinders, presumably the others do. If they differ in construction and some are less likely to throw out fire than others, the company can prove these facts.

The court received in evidence a train sheet kept by the defendant company's Chief Train Dispatcher at DeSoto, and showing what trains passed through Irondale on the night in question. This document is said to have been inadmissible. The sheet was identified by the train dispatcher and proved to have been kept in defendant's regular course of business. We have no doubt it was competent evidence; but if it was not, its admission did no harm, because the defendant proved the same facts by the crews of the engines attached to the trains which passed Irondale on the night in question.

Counsel for defendant insist the evidence relied on to show the fire was kindled by one of the defendant's locomotives was insufficient to justify the submission of that issue to the jury; an assignment to which we have given patient study because we are sensible that the evidence is circumstantial and not as satisfactory as positive proof would be. But the question for our decision is: Was there any substantial evidence tending to prove the cause of the fire was a coal or cinder cast out by one of defendant's locomotives? In dealing with this question we will state the evidence in the phase most favorable to plaintiff, as we are bound to do in view of the jury's right to accept some parts of the evidence as true in preference to other parts. The weather was dry and the night starlit, with a breeze floating from the east or southeast; that is, from the railroad track toward the barns. The railroad track at that point was on a high bank and nearly level with the eaves of the barns. We

have stated that defendant's locomotives, in running up the Irondale grade, often threw out sparks and cinders. Witnesses swore to having seen them rise from twenty to forty feet in the air and that cinders·had fallen still burning further away than plaintiff's property. When first discovered the fire was on the outside and about the middle of the roof of the larger barn; the one nearest the railroad track. At that time there was no fire inside the barn. .No testimony was given which tended to show any other possible origin of the fire, except that two women who were passing about half past eight o'clock in the evening swore they saw a dim light in the larger barn moving upward, as though a person with a match was climbing into the loft. But this hour was too long before the barn took fire for the light observed to be deemed the probable origin of the conflagration, and there was no other light about the barns on that night. At least one of the trains which passed after midnight was heavy and much steam had to be used to draw it up the grade. The fire was first seen about one o'clock, and the heaviest train had passed at 12:51 p. m. and the others at four minutes after twelve, and five minutes after twelve. One witness testified that prior to the fire in question, while standing in the barn lot and beyond the buildings, a cinder from a locomotive had fallen on his hand and burned him. This is a fair statement of the substance of the evidence relied on to prove the origin of the fire was burning matter emitted by one of defendant's locomotives. Was it sufficient to warrant the inference that such was its origin, the fact essential to plaintiff's recovery? The testimony that on other occasions hot coals or cinders had fallen as far from the railroad track as the barns, and about the barns, showed the possibility of the fire having been kindled by means of a hot coal from a locomotive. This point has been determined on great consideration by eminent courts and is now settled law. [Railroad v. Richardson, 91 U. S.

470, and citations below.] We are cited to Coale v. Railroad, 60 Mo. 227, and Lester v. Railroad, 60 Mo. 265, as ruling the other way. But those decisions were overruled in Hoover v. Railroad, 15 S. W. 480, and the same rule declared which was approved in the Campbell and Mathews cases, supra. A bare possibility that sparks from an engine on defendant's line might have kindled the fire, would not, it seems to us, justify a finding that it was thus kindled, though authoritative opinions appear to hold it would. We think the testimony ought to go to the extent of proving the probable origin of the fire was cinders or sparks emitted from an engine. But we need not decide as to whether a possibility suffices to carry such a case to the jury, for a probability was shown in the present case by evidence tending to prove there was no other cause for the fire. Whatever the flickering light that was seen in the barn early in the evening may have been, it could not have caused the conflagration if, as witnesses swore, the large barn was burning only in the middle of the roof and on the outside, when first discovered. This circumstance, and the facts that said barn was nearest to the railroad, that the wind was then blowing from the railroad toward the barn and that the fire was discovered in a few minutes after the passage of the last train, and not long after the other two had passed, are of weight in showing a locomotive was the source of the fire.

Leaving the facts of the present record and turning to those of kindred cases, we find a nearly unbroken current of decisions holding that, in like proof, the question of the origin of the fire is for the jury. We are cited in defendant's brief to the opinion in Sheldon v. Railroad, 29 Barb. 226, as an authority, based on facts parallel to those before us, against the submission of the issue of this defendant's liability to the jury. In said Sheldon case the fire was not discovered until an hour and seventeen minutes after the locomotive had passed, nor was it

proved there was no fire in the burned building; two circumstances which distinguish the case from this one. But in discussing the question of the degree of certainty in the proof required to make a prima facie case in such actions, the court made remarks to which our attention is called with emphasis. The opinion said that a plaintiff's cause must fail if it depends on circumstantial evidence which is not cogent enough to leave no reasonable doubt of the origin of the fire. We have no doubt that this is not now the law generally, or in Missouri, or even in New York where the Sheldon case was decided. Such proof is exacted in few, if any, classes of civil cases, and surely is not exacted in actions against railroad companies for damage done by fires. The correct rule is stated in Baltimore, etc., Railroad v. Shepley, 39 M'd. 251, an action to recover damages for the destruction of plaintiff's property by a fire set by a locomotive. The opinion therein indicates that the railroad company had requested instructions setting forth that the property owner was bound to show beyond a reasonable doubt the fire originated from a locomotive of the railroad company. In dealing with this position the Supreme Court of Maryland said:

"The fourteenth and fifteenth prayers were also properly rejected. There is a well-recognized distinction in regard to the degree or quantity of proof in the trial of civil and criminal causes. In the latter, the presumption of innocence is so strong, that the law in favor of life and liberty requires the fact of criminality to be established, to the exclusion of every other reasonable hypothesis; or, in other words, to a moral certainty. In mere civil disputes, however, where no violation of the law is in question, and no legal presumption operates in favor of either party, the preponderance of probability, due regard being had to the burden of proof, may constitute sufficient ground for a verdict. In this case it is not alleged that the property was willfully burnt

123 App—26

by the defendant, and although the plaintiff was bound
to prove to the satisfaction of the jury, that the fire
was occasioned by the negligence of the defendant, yet
he was not bound to prove this beyond what is termed
a reasonable doubt, as applied to the trial of criminal
causes."

That evidence showing no more than a probability
that the source of a fire was a railroad engine, is suffi-
cient to submit to the jury, was decided, in effect, in
Campbell v. Railroad, supra; Sheldon v. Railroad, 14
N. Y. 223; Field v. Railroad, 32 N. Y. 339; Railroad
v. Richardson, 91 U. S. 470; Smith v. Railroad, 63 N. H.
25, and numerous other cases. But of course the proba-
tive force of the evidence must be strong enough to in-
duce a belief in the minds of the jury that the fire in
fact originated from a locomotive, not merely that it
might have done so. The evidence ought to warrant
more than a conjecture as to the source of the fire—
ought to suffice to induce a conclusion regarding the
matter in the minds of reasonable men. [Atchison, etc.,
Railroad v. Mathews, 58 Kan. 447; Gibbs v. Railroad,
104 Mo. App. 276, 78 S. W. 835.] Hence the precise
question in this connection is, whether it is so apparent
that the testimony introduced by plaintiff was not ade-
quate to produce a reasonable belief that one of defend-
ant's engines started the fire, instead of merely leaving
room for a surmise that it did, that the court below ought
to have refused to leave defendant's liability to be de-
termined by the jury. After reflecting over this matter
and reading relevant decisions, we find ourselves unable
to yield assent to defendant's proposition that plaintiff's
evidence went no further than to show a spark from one
of defendant's engines might have caused plaintiff's loss.
We are not convinced the fire was communicated from an
engine; but are even less convinced that a reasonable
mind could not have reached the conclusion that it was
on the proof offered. The weightiest facts are that it

was burning outside the barn roof when first seen, was detected shortly after trains had passed and the failure to show any other possible cause of it. That it was not kindled by a tramp or other person, either carelessly or maliciously, is inferable from its beginning on top of the roof. We find this statement of the law in a standard treatise, with numerous cases cited in support of it:

"In a very large number of cases there is no direct evidence of the origin of the fire. A train of cars passes along the track, and within a short time thereafter property on adjacent premises is discovered on fire. The question then is what facts can be exhibited to the jury from which they may properly attribute the origin of the fire to the railroad company? In this connection it has been held that evidence that immediately upon or soon after the passing of the defendant's train the fire started, and that there was no fire on the premises before, and no other apparent cause for the fire, warrants an inference of fact that the fire was caused by the defendant's train. And it has been held this inference may still be indulged though the defendant's witnesses testify that the engine was skillfully handled." [13 Am. and Eng. Ency. Law, p. 513.]

Another treatise of merit thus states the law and supports its text by many cases:

"As there are few, if any, cases where persons see the fire directly communicated, proof of the communication must necessarily be more or less circumstantial. But, even though circumstantial evidence is sufficient to establish liability, where the evidence is such that it is a mere conjecture as to whether or not the company set the fire it is proper to nonsuit the plaintiff. Where, however, it is shown that there was no probable cause for the fire except the railway locomotives it may be sufficient to fasten it upon the company. It is not necessary that the plaintiff should produce evidence to exclude every other

possible cause of the fire. The plaintiff is not always required to show that any particular engine set out the fire, and evidence that other engines of the company, similar in general construction to that supposed to have set out the fire, set out fire about the time the injury occurred has often been held admissible. .As tending to show that the fire was set by the defendant, it has also been held competent to prove that at various times before the fire occurred the engines of the company set fires along its line in the vicinity. Proof that fires were set along the line of the railway is not admissible unless it is shown that they were set by the railway company. But it has been held competent to show that coals of fire had previously been dropped or been found on the track at or near the place where the injury occurred." [3 Elliott, Railroads, sec. 1243.]

A leading case on the subject is Smith v. Railroad, L. R. 6 C. P. 14. The property burned was a cottage which stood outside the railroad right of way, beyond a stubble-field, on a highway running parallel to the railroad and some two hundred feet distant from the latter. The weather was dry; grass had been trimmed on the right of way and piled in small heaps, and other fires had been set as trains passed. The particular fire caught in the grass, but whether in a pile of trimmings or not, was unproved. It started shortly after the passage of a train and extended across the stubble-field to the plaintiff's cottage. One question was whether, on these facts, the jury were entitled to find the fire started from sparks cast off by a locomotive. Counsel for the railroad company suggested that it might have started from a match, the ash of a cigar dropped from a car window, or from a coal from a pipe smoked by some workman on the right of way. In the recital of the facts is the statement that there was no evidence to show defendant's engines were improperly constructed or that the fire originated

from them, except the recent passage of one. The opinion said:

"The question for us is how all this occurred? There is some doubt how the fire originated, but there was ample evidence for the jury, which would have been rightly left to them, that it originated from sparks from the engine falling on the dry heaps of trimmings and thence extending to the hedge and stubble-field."

The difficulty the court encountered was not in finding the fire started from sparks from the engine, but whether or not the railroad company was negligent. The fact of negligence found, was the piling of the trimmings of grass on the right of way. But what we are concerned with is, that the court held there was evidence for the jury on the issue of whether the fire started from a spark thrown off by a locomotive and which fell on one of the grass heaps. This case has been cited frequently with approval by the courts of this country.

In Union Pac. R. R. v. DeBusk, 12 Colo. 294, the proof of the origin of the fire was no more than that the burned hay ignited shortly after a train had passed. The court said:

"The evidence was sufficient to warrant the inference that the fire was caused by the defendant's passing train, as alleged in the complaint; several witnesses testifying in substance to the springing up of the fire immediately upon the passing of the train, and that there was no fire on the premises before and no other apparent cause for the fire. From the nature and circumstances of such case, considerable latitude must be allowed in the introduction of testimony, and in the drawing of inferences as to the origin of the fire. [1 Thompson, Negligence, 159; Railway Co. v. Jones, 9 Colo. 349; Butcher v. Railroad, 8 Pac. 174.]"

In Hoskinson v. Railroad, 66 Vt. 618, a house, barn and contents were burned, there being no direct evidence as to how the fire started; but soon after the passage of

one of defendant's trains the gable-end of the house nearest the track was in flames.   There was proof that cinders had theretofore fallen and started fires nearby.   On this evidence the court supported a verdict for the plaintiff, holding that testimony to show how far cinders had been cast on other occasions was admissible to overcome the presumption against the plaintiff because of the distance of his property from the track.

In Carson v. Railroad, 29 Minn. 12, two stacks of hay had been burned, there being no direct proof that they were ignited by an engine.   The opinion said:

"The evidence tended to show the fire started in the grass near, and to the leeward of, defendant's track a few minutes after the train had passed; that there was quite a stiff breeze; that there was no person and no other fire than that of the passing engine in the vicinity at the time.   It being a matter of common knowledge that engines do emit sparks which start fires in this way, and there being no other apparent probable explanation of the origin of the fire, we think these facts render it highly probable that this fire was set from the passing engine and fully warranted the jury in so finding."

In Crist v. Railroad, 58 N. Y. 638 (see also 1 Thomp. & Cooke 435), evidence for plaintiff tended to show there was no probability that the fire was caused otherwise than by sparks from an engine; whereas defendant's testimony tended to show a probability that it was caused otherwise.   Plaintiff was allowed to prove that on other occasions, passing engines had emitted sparks and coals which fell farther from the track than the barn; which evidence was ruled competent and sufficient to uphold a verdict in plaintiff's favor.

In Torpey v. Railroad, 64 Mo. App. 382, the action was for damages for the burning of a house located forty feet from the railroad track.   The evidence of the origin of the fire was that a train had gone by some fifty minutes before it was discovered and two others ten or

fifteen minutes before.   There was no affirmative evi-
dence to show the engines had emitted sparks while in
the vicinity and some evidence to show they had not.
The wind was blowing so as to carry sparks from the
engines to the house.   The fire began in the roof of the
building and had progressed enough to be discovered
within ten or fifteen minutes after the last train passed.
There was no reasonable opportunity for it to kindle ex-
cept by communication from a locomotive as there was
no fire in the building.   On these facts it was held a
question for the jury as to whether the fire was thus
kindled.   We deem it unnecessary to review other au-
thorities for the purpose of showing that the evidence
in the present case was sufficient to make an issue for
the jury as to whether or not defendant was responsible
for the loss.   Undoubtedly it was sufficient, according
to all the authorities we have cited or read, except the
Sheldon case in the 29th Barbour.   Many more decisions
supporting the ruling that this evidence was for the jury,
can be found in the footnotes to the text works and in
the opinions cited supra.

In instructing the jury as to their duty to ascer-
tain the origin of the fire, the court gave all the requests
of the defendant, declaring that in order for the plaintiff
to recover it must establish, by the greater weight of
evidence, that one of defendant's engines which passed
Irondale on the night of the loss, emitted fire which was
communicated to plaintiff's barns, and unless this fact
was so established, the verdict must be for defendant;
that if the evidence showed some other cause or some
other party set out the fire, the finding must be for
defendant; that a verdict could not be found for plaintiff
on a mere conjecture as to the cause of the fire, but the
jury must find that it was communicated by an engine
on defendant's road while passing Irondale, and the bur-
den of proving this fact by the greater weight of evidence
was on the plaintiff; that the evidence to prove the

origin of the fire was purely circumstantial, and if the jury found the circumstances were more consistent with the theory that it caught from some other source than defendant's engines than with the theory that it was communicated by an engine, the verdict should be for defendant. Those charges could have left the jury in no doubt as to their duty in weighing the testimony touching the origin of the fire.

The court instructed at plaintiff's instance, that if the jury believed plaintiff was the owner of the two barns and their contents, and the hog pen, and said property was destroyed by fire from one of defendant's engines, defendant was liable for the damage, regardless of whether it was negligent or not. Complaint is made of the charge as referring the jury to the petition for the issues, but it did nothing of the kind. The only reference to the petition in the instruction was in speaking of the property as that mentioned in the petition. The main issue in the case was whether or not the fire was kindled from coals from an engine, and this issue was carefully defined and submitted in all the instructions. In another instruction the court told the jury that if the issues were found for plaintiff, its damage should be in such sum as they believed the barns, their contents and the hog pen were reasonably worth on the night of the fire, not to exceed the sum sued for, to-wit, $6,479. This instruction is complained of because it did not set out the different items of property. The proof was conclusive that all the property sued for was destroyed and there was testimony as to the value of every portion of it. The verdict was for a round sum instead of separate values for each article, but this is no ground of objection. These instructions are almost copies of two approved by the Supreme Court in Mathews v. Railroad, and we think there is no merit in the criticism of them.

The judgment is affirmed. All concur.