ARTHUR O. MARKT, Respondent, v. CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, November 15, 1909.

1. RAILROADS: Setting Fire to Buildings: Sparks From Engine. Where it is charged that a mill near a railroad was burned by fire communicated by sparks from a passing engine and the evidence tends to prove that it might have happened as charged and that the fire could have originated in no other manner, the finding of the jury in favor of the plaintiff will not be disturbed.

2. ———: Cause of Fire. The process of reasoning by excluding every other means by which the fire could have been started, tends to support the theory that it was by means of sparks thrown out by defendant's engine.

Appeal from Holt Circuit Court.—*Hon. William C. Ellison*, Judge.

AFFIRMED.

*Culver & Phillip* and *E. M. Spencer* for appellant.

The court erred in refusing defendant's demurrer offered at the close of plaintiff's case and again at the close of all the evidence. Gibbs v. Railroad, 104 Mo. App. 276; Manning v. Railroad, 119 S. W. 464; Campbell v. Railroad, 121 Mo. 340; Erhart v. Railroad, 118 S. W. 657. There is no direct evidence in the record that the fire was communicated from defendant's engine. No witness testified that it was. Plaintiff depended entirely upon circumstantial testimony, and this consisted entirely of the evidence of Mr. Whistler that when the engine started at the depot more than a quarter of mile from the mill, he saw sparks thrown from the smokestack "as high as a telegraph pole;" the testimony of, plaintiff that as the train passed the mill he heard perhaps a dozen cinders rattle against the office window on the first floor of the mill, and the testimony of several witnesses that the smoke appeared, or that they heard the alarm of fire ten or fifteen minutes after the train departed. But this falls short of the requirements of the law in view of the other undisputed evidence in the case, and certain physical facts disclosed in the records which absolutely negative the theory that the fire originated from the engine. (a) The fire originated inside the building. The building stood fifty feet and four inches from the center of the track. The only opening in the building was a broken window pane 8x10 inches in the second story thirty-five feet above the defendant's roadbed. It was through this opening that plaintiff was forced to conclude, and did insist, the spark flew burning into the building. Not one word of testimony was offered to show that an engine going down grade (as it was in this case) drawing three cars, or any engine, for that matter, would throw a spark burning a distance of fifty feet. Was the absence of such testimony fatal to the plaintiff's case? If the verdict of the jury is the result of passion and prejudice the appellate court will set it aside.

Lehnick v. Railroad, 118 Mo. App. 611; Walton v. Railroad, 49 Mo. App. 620; Garrett v. Greenwell, 92 Mo. 120; Gage v. Trawick, 94 Mo. App. 307; Kennedy v. Transit Co., 103 Mo. App. 1.

*B. R. Martin, R. B. Bridgman* and *Charles C. Crow* for respondent.

The facts in this case are such as to bring it clearly within the rule announced in the following cases: Tapley v. Railroad, 107 S. W. 656; England v. Wabash, 114 Mo. App. 547; Lead Co. v. Railroad, 123 Mo. App. 402; Erhart v. Railroad, 129 Mo. App. 90. In this case it was shown that the engine was throwing sparks as high as telephone or telegraph poles before reaching the mill; that it was blowing and puffing at the building and near the open window. It was not, and could not be shown that the fire was caused by any agency other than sparks from the engine of the locomotive.

BROADDUS, J.—This is a suit to recover damages for loss sustained by plaintiff by the burning of his mill and electric plant, alleged to have been set on fire by sparks from one of defendant's locomotive engines. The plaintiff obtained judgment from which defendant appealed.

As the appellant has taken his appeal upon the sole ground that the respondent was not entitled to recover under the proof, it is necessary to examine all the material evidence in the case for a proper determination of that question.

There is no question that the fire occurred about nine o'clock a.m. June 27, 1907, and that the property mentioned was entirely destroyed by fire. The building was located in the town of Maitland, Missouri, fifty feet and four inches from the line of appellant's railroad track. The depot is situated on the west side of the track, which after leaving the depot curves to the southwest and is about fifteen hundred feet from

where plaintiff's building was located, which was also situated on the west side of the track. The building was a two story and basement structure covered with metal. In the basement were the engines, boilers and machinery. In the first story were the mill machinery, feed room, and office; and in the second story was the machine for cleaning meal and grain and other material.

No one saw how the fire started, so it is a matter to be inferred from the evidence, if the appellant is to be held liable. As the respondent was the only person in and about the building just previous to its discovery the case depends largely upon his evidence. He stated, that the line of the railroad extended in a semicircle from the depot and then in a southwesterly direction past his building which faced the railroad to the southwest; that there were four doors and three windows on the south side facing the track; that there was an opening in the window of the upper story on the south side about ten by eight inches where a pane of glass had been broken a few weeks previously; that the weather was dry; that there was chaff scattered on the upper floor near this opening and dust and cobwebs in the room, also some sacks and lumber; that he went to the building on the morning of the fire about fifteen minutes after five o'clock; that he went in and got some feed, and then went through and milked his cow on the other side of the railroad track, and then came back and through the building again and then to his breakfast; that one Frank Ross had been in charge of the machinery until midnight the night before after which no one was in charge; that he returned to the building about seven o'clock and remained there until about nine fifteen o'clock; that he during this time went through the building, first to the boiler-room to see the condition of the fire and found that it was banked, and in good condition, and he did not disturb it; that he examined the condition of the furnace and that everything was all right and the fire well

banked; that he then went upstairs opened the doors and swept the first floor; that he then figured up some coal accounts and did a little book work and writing; that he saw a train pass while he was in the electric plant office; that when it passed he heard cinders rattle on the southeast window; that it sounded like the rattling of hail; that he remained there until a drayman drove up with a package and delivered it to him; that he then went out to a storage-room northwest of the building where he had his workshop, at which time it was about fifteen minutes after the train had passed; that in a few minutes he started to the barn of his residence, just across the street; that as he was crossing Mr. and Mrs. Southwell who were driving in a buggy came along and as they passed Mr. Southwell hallowed at him and said there must be something wrong; that he then looked back at the plant and saw a little smoke coming out from under the eaves; that from his position he could only see the northwest side of the building; that he ran back quickly and tried to get into the office, but as he could not get the door open quickly, he went around to the engine-room and broke in; that then he attempted to get upstairs on the second floor; that then he found that the whole southeast part of the building was on fire from bottom to top, that he then tied the whistle down so as to give alarm; that when he came from tying down the whistle the fire was all in the southeast part of the room and the first place the flames broke through was through the broken window; and that the time from the passage of the train until his attention was called to the fire was about fifteen minutes. It was shown that the window in question was thirty-five feet above the level of the railroad track, and that the day was mostly clear and that a brisk wind was blowing from the southeast. There was testimony to the effect that the track declined as it approached plaintiff's building; that the engine pulling the train after it left the depot was throwing cinder sparks as high

as the telegraph poles, but no one testified that it was throwing sparks when near respondent's building, save and except the statement of respondent that they rattled on the windowpanes of his office.

There was evidence offered on the part of defendant the tendency of which was to show that within a very few minutes after the train passed the building was burning rapidly and before it could have been started by a spark from defendant's engine.

The argument of appellant is that there is no evidence going to show that a spark emitted from the engine going downhill could or did throw sparks a distance of fifty feet, and upward thirty-five feet from a level of the said roadbed, so as to enter the broken pane of glass in the second story of the building. In estimating the height we must make allowance for about ten feet, the distance from the level of the track and the top of the smokestack.

As we have seen, the engine when it left the depot was throwing sparks as high as the tops of the telegraph poles and that when it came near respondent's mills it was throwing them so as to reach the window in the first story of the building fifty feet away. If respondent is to be believed, which was a question for the jury, sparks were carried that distance and height unless we are to conclude that it was an impossibility.

Appellant's position is based mostly on two decisions one by the St. Louis Court of Appeals and the other by the Supreme Court. In the first mentioned the court said: "In this case we face not only a lack of direct evidence to show sparks from the engine that was heard to go by after midnight, set fire to decedent's house, but a lack of direct evidence to show sparks escaped from it. The precise question for decision therefore is: "Is it so generally known to person of average intelligence that a locomotive drawing a heavy load on an ascending grade throws sparks or cinders fifty feet away and hot enough to ignite the roof of a house

if they happen to fall on one, etc." The court answers the question in the negative. [Gibbs v. Railroad, 104 Mo. App. 276.] In the second case it is said: "No evidence was introduced to prove the possibility of the fire being ignited by sparks thrown off by defendant's engine at the distance whatever that may have been it was seen to throw them; and some proof of the kind was required." [Campbell v. Railroad, 121 Mo. 340.] In the latter case however the court said: "The facts that live sparks were thrown from engines, and did ignite grass, and other combustible materials, would tend to prove the probability that the fire was communicated from an engine." The evidence was held sufficient to authorize a verdict for plaintiff. In the later case of Manning v. Railroad, 119 S. W. 464, the St. Louis Court of Appeals (which was similar in principle), reiterated what was said in Gibbs v. Railroad, supra, that there was a lack of proof that defendant's engine communicated the fire.

There is a marked difference in the facts in the two cases in the St. Louis Court of Appeals, and the one under consideration, and a much stronger case was made out in this than in that of Campbell v. Railroad, supra, where the plaintiff was permitted to recover.

Here the evidence shows that the engine in question did throw sparks to a great height and was throwing them at the time it passed plaintiff's building. There was a brisk wind blowing at the time, that carried cinders to the plaintiff's building a distance of fifty feet, but there is no direct proof that any were carried so high as the broken pane of glass in the second story thereof. That sparks may have been thrown to such an elevation may be implied from the circumstances. It is true that under ordinary conditions, without the interference of the wind, sparks emitted from any engine, however prone to throw sparks, would not throw them to any great distance because their course would

be mostly in a direct line upward and they would descend by the force of gravitation in the same manner. But we do not think there can be any doubt but what sparks thrown off from a burning building or emitted from a locomotive engine during a strong wind may be carried to a much greater distance than fifty feet and much higher than twenty-five feet. As a matter of course the heighth and distance in which they could be carried would depend greatly upon the force with which the sparks were emitted and the force of the wind. And it is safe to say that such is known to all persons of average intelligence.

The probability is that the fire could have been communicated in no other way than from sparks emitted from defendant's engine unless it was set by plaintiff himself. According to his statements he had just previous to its discovery examined the building and there was no evidence of fire anywhere except in the furnace which had been banked. The mill and the electric machinery were not in operation and had not been since midnight. But it is not for the court to say that plaintiff committed perjury as the jury was the sole judge of his credibility and as they evidently believed he told the truth that was an end to the matter.

It is probable that a live spark was carried by the force of the wind to the upper story and that it entered through the opening and fell upon the chaff or other combustible material and ignited the fire that consumed the building. The evidence in the most positive character tends to prove that the fire could have originated in no other manner. The process of reasoning by excluding every other means by which the fire could have been started, tends to support the theory that it was by means of sparks thrown out by defendant's engine.

This case seems to fall within the rule that where the evidence shows no more than a probability that the source of a fire was a railroad engine, is sufficient to submit to the jury. [Lead Co. v. Railroad, 123 Mo. App.

394; Tapley v. Railroad, 129 Mo. App. 88; Matthews v. Railroad, 142 Mo. 645; Campbell v. Railroad, supra.]

For the reasons given the cause is affirmed. All concur.