## J. C. HUDSPETH, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

**St. Louis Court of Appeals, April 8, 1913.**

1. **RAILROADS: Fires: Statute.** Under Sec. 3151, R. S. 1909, providing that railroad companies shall be responsible in damages to every person whose property may be injured or destroyed by fire communicated directly or indirectly by engines in use on their railroad, negligence on the part of the railroad company is not essential to liability.

2. ——: ——: **Evidence.** That the fire complained of was caused by sparks from a railroad engine may be shown by circumstantial evidence, provided the circumstances relied on are consistent, and tend in a substantial way to support plaintiff's claim, and make it probable, and justify a reasonable inference, that the fire was so caused.

3. ——: ——: ——. Where the circumstances reasonably justify an inference that the fire complained of originated from sparks thrown off by a railroad engine and also make it improbable that it could have originated from any other source, the evidence is sufficient to justify a recovery against the railroad company.

4. ——: ——: **Sufficiency of Evidence.** In an action against a railroad company for the destruction by fire of a barn situated 665 feet from the track, where there was no direct proof that defendant's engines actually emitted sparks, and no positive testimony that sparks, if emitted, could, on the day in question, have been blown to the barn and remained hot enough to ignite it, *held* that the circumstantial evidence was sufficient to warrant the submission to the jury of the question whether the fire was caused by sparks from one of defendant's engines.

5. ——: ——: Evidence. In an action against a railroad company for the destruction by fire of a barn situated 665 feet from the track, testimony of a witness, that he had frequently seen sparks from defendant's engines fly that distance and remain red and burning, was competent without any showing that wind and weather conditions were the same; the failure to establish that the conditions were similar affecting the weight of such testimony and not its competency.

Appeal from Dunklin Circuit Court.—*Hon. W. S. C. Walker*, Judge.

AFFIRMED.

*W. F. Evans, Moses Whybark* and *A. P. Stewart* for appellant.

(1) The demurrer to the evidence at the close of plaintiff's case should have been sustained; and the peremptory instruction asked by defendant at the close of all the evidence should have been given. (a) Because there was no proof that sparks or coals of fire were thrown out by defendant's locomotive engine. (b) Because there was no evidence that if such coals of fire were thrown out by the engine, they would be carried the distance from the track to the barn, and be sufficiently hot to set fire to plaintiff's hay. Peck v. Railroad, 31 Mo. App. 123; Peffer v. Railroad, 98 Mo. App. 291; Bank v. Railroad, 98 Mo. App. 330; Gibbs v. Railroad, 104 Mo. App. 276; Funk v. Railroad, 123 Mo. App. 169; Manning v. Railroad, 137 Mo. App. 631; Campbell v. Railroad, 121 Mo. 349; Fritz v. Railroad, 148 S. W. 74. (2) The verdict is based upon conjecture, and should not be permitted to stand. Peck v. Railroad, 31 Mo. App. 123; Peffer v. Railroad, 98 Mo. App. 291; Bank v. Railroad, 98 Mo. App. 330; Moore v. Railroad, 28 Mo. App. 622; Glick v. Railroad, 57 Mo. App. 97; Yeager v. Railroad, 61 Mo. App. 594; Reed v. Railroad, 112 Mo. App. 575; Perkins v. Railroad, 103 Mo. 52. (3) The court erred in permitting plaintiff to show by the witness Whitlock over de-

fendant's objection, the distance he had seen other sparks blown from passing trains, without showing that weather conditions were similar. Fritz v. Railroad, 148 S. W. 74.

*Arthur L. Oliver* for respondent.

(1) Circumstantial evidence in cases of this character is sufficient, and further, that if any evidence, however slight it may be, direct or inferential, it must go to the jury, who are the exclusive judges of its weight and sufficiency. Twohey v. Fruin, 96 Mo. 109; Charles v. Patch, 87 Mo. 462; Rice v. Sally, 176 Mo. 145; Kelly v. Railroad, 70 Mo. 607. (2) There were ample facts and circumstances from which the court and jury might have reasonably inferred that the fire was caused from appellant's locomotive, and respondent was not required to prove his cause of action by direct and positive testimony, but could and was entitled to establish his case by circumstantial evidence, and this court has so held repeatedly. Wright v. Railroad, 107 Mo. App. 209; Sappington v. Railroad, 14 Mo. App. 86; Kenney v. Railroad, 70 Mo. 243; Torpey v. Railroad, 64 Mo. App. 382; Campbell v. Railroad, 121 Mo. 340; Walker Brothers v. Railroad, 68 Mo. App. 465; Matthews v. Railroad, 142 Mo. 645. (3) Appellant next contends that the testimony of the witness Whitelock is incompetent, and that the case should be reversed on account of the admission of his testimony, but an examination of the authorities will not sustain this position. Campbell v. Railroad, supra; Wright v. Railroad, supra.

ALLEN, J.—This is a suit to recover from defendant the value of a lot of hay, belonging to plaintiff, which was destroyed by fire on September 3, 1909, and which the plaintiff alleges was set on fire by sparks escaping from a locomotive engine belonging to defendant, appellant here.

The barn in which the hay was stored was situated in an open field, near no dwelling house, and located approximately two hundred and fourteen yards away from defendant's track, in Pemiscot county, Missouri. At the point in question, the track of defendant extends nearly east and west, and the barn was located on the north side thereof. The barn appears to have been used only for the purpose of storing hay, and at the time of the fire it was filled with hay, part of which was baled, and part loose hay. The south side of the barn, facing the railroad track, was unenclosed. The ends were closed, and the north side about half closed. The hay was so stacked as to make a wall on the south side of the barn from the ground to the roof. The evidence shows that in the southeast corner of the barn, near the roof, there was loose hay mixed with crab grass.

The fire occurred about 4:30 p. m. on September 3, 1909, and the evidence shows that it was discovered about fifteen or twenty minutes after a passenger train of defendant had passed the place. The evidence shows further that the weather was very dry, and had been so for some time, and that it was very dusty; that the hay had been stored in the barn for some weeks, and was very dry and readily combustible. On the day in question a strong wind was blowing from a little west of south, in a direction a little east of north. The evidence shows that the fire was first seen in the hay near the roof of the barn, on the south side thereof, near the east end. The barn in question stood in the southwest corner of a meadow, and between the barn and the railroad track was a cornfield. Immediately south of the barn was a cornfield which extended up to defendant's right of way.

Before the fire occurred no one was seen around the barn; no one lived near it, nor did the evidence show that there was any work being done in that vicinity. After the fire, an examination was made of the

ground about the site of the barn and no footprints could be found, nor anything to indicate that any one had been about there. Coal cinders were found on the ground in the cornfield between the barn and defendant's right of way. About twenty-five feet south of the barn a coal cinder was found which had lodged on the blade of a cornstalk and had burned into the blade and blistered it. This cinder was about the size of an ordinary bean, and was described by a witness as being about the size of the end of his little finger. So far as the testimony goes, this is the only positive evidence of a live cinder being carried to within that distance of the wall of loose hay, but the evidence shows that between where this cinder was found and the right of way a great many burned cinders were found scattered over the ground.

One Whitlock, a witness for plaintiff, lived, in 1909, in a house situated about three hundred yards west of the barn, and somewhere from one hundred and seventy-five to two hundred yards from the railroad track. He testified to having seen live sparks from defendant's passenger trains, at night, blown as far as his house, and that he had seen such sparks lie on the ground as far from the railroad track as was the barn that was destroyed; that the sparks in question were red, and that he had frequently observed them thus being blown from a passenger train that regularly passed about eleven o'clock at night. He testified that in dry weather he would get up at night when this train passed to see whether his barn had caught fire; that he had seen such sparks set fire to the fence along the right of way, and set out fires between the tracks and this fence. He also testified that he had stacks of hay in his lot and would observe sparks from defendant's engine for the purpose of protecting his barn and hay. There was testimony that, on the day that the hay and barn were destroyed, the velocity of the wind was such that cinders and

particles of shingles off of the roof of the burning barn were blown from half to three-quarters of a mile north thereof.

On behalf of defendant, there was evidence going to show that the condition of the locomotive which drew the passenger train in question was at the time good; that it had a wire netting to act as a spark arrester, which would break sparks into pieces probably a little larger than a bean; that the railroad track at this point is nearly level, and that there was no extraordinary or unusual puffing of the engine; that on a level track a locomotive will throw sparks about the size above mentioned through the netting, and probably seven feet above the top of the smoke stack. There was testimony that the spark arrester in this engine was inspected two days after the fire and found to be in good condition. Defendant's evidence went to show that the south edge of the barn was located 665.6 feet from the center of defendant's track. Defendant's engineer testified that in his opinion the velocity of the wind has nothing to do with the "life" of a spark, but stated that he didn't believe a spark would "live just as long" in a strong wind as in a slow one.

At the close of plaintiff's case, defendant requested the court to give a peremptory instruction in the nature of a demurrer to the evidence, which was refused by the court; and again at the close of the entire case defendant offered a like demurrer to the evidence, which was likewise refused. There was a verdict for plaintiff, assessing his damages at the sum of $1500, and judgment entered accordingly. After unsuccessful motions for a new trial and in arrest of judgment, and preserving exceptions to the overruling thereof, defendant has appealed to this court.

For a reversal of the judgment below, appellant urges that the demurrer to the evidence should have been sustained; that the verdict is based purely upon speculation and conjecture; and that the court erred

in permitting the plaintiff to show by the witness Whitlock that "live" sparks from defendant's engines had been blown as far as the barn in question, without showing that this occurred under weather conditions similar to those existing on the day of the fire.

It is insisted that plaintiff failed to make a case entitling him to go to the jury, (1) because there was no proof that any sparks or coals of fire were thrown out by defendant's locomotive engine, upon the occasion in question, (2) because, if such sparks or coals of fire were so thrown out on this occasion, that there was no evidence that they could be carried the distance from the track to the barn and retain sufficient heat to set fire to plaintiff's hay.

Under the statute upon which the action is based (Sec. 3151, Rev. Stat. 1909), it is not necessary, of course, for plaintiff to prove negligence on the part of the defendant in order to recover. Unquestionably the utmost diligence cannot prevent the escape of live sparks from locomotive engines. And the right of recovery has been said to be leased upon the maxim that "every one should so use his property as not to injure that of his neighbor." [Campbell v. Railway, 131 Mo. 340, 25 S. W. 936.] There was no direct proof that defendant's engine which passed a short time before the fire was discovered, actually emitted sparks or fire, nor any positive testimony that such sparks, if emitted, could, on the day in question, have been blown the distance to plaintiff's hay, and remained hot enough to ignite it. The evidence to make out liability on the part of the defendant was, as is usual in these cases, purely circumstantial. Nevertheless the probable origin of the fire may be shown by circumstantial evidence, provided the circumstances relied upon are consistent and tend in a substantial way to support the claim of plaintiff, and make it probable, and justify a reasonable inference, that the fire was caused by sparks from defendant's engine. [Camp-

bell v. Railroad, 121 Mo. 340, 25 S. W. 936; Waddell
v. Railroad, 146 Mo. App. 604, 124 S. W. 588; Foster
v. Railroad, 143 Mo. App. 547, 128 S. W. 36; Markt
v. Railroad, 139 Mo. App. 456, 122 S. W. 1142; Tapley
v. Railroad, 129 Mo. App. 88, 107 S. W. 470; Lead
Company v. Railroad, 123 Mo. App. 394, 101 S. W.
636; Wright v. Railroad, 107 Mo. App. 209, 80 S. W.
927.]

And where the circumstances reasonably justify
the inference that the fire originated from sparks
thrown off by the defendant's engine, and also make
it appear to be improbable that the fire could have
originated from any other source, then clearly the
plaintiff's case is sufficiently made. [Foster v. Rail-
road, supra; Markt v. Railroad, supra; Lead Com-
pany v. Railroad, supra; Wright v. Railroad, supra;
Fritz v. Railroad, 243 Mo. 62.]

An extended review of the cases on this subject
is unnecessary. As we have said above, there was
evidence that the fire was first discovered fifteen or
twenty minutes after a passenger train of defendant
had passed; there was a strong south wind blowing di-
rectly from the track toward the barn filled with hay;
the weather was extremely dry, and had been so for
some time, and the hay was very dry and readily com-
bustible. The barn was isolated from other buildings,
and it appears that no one had been about it on the
day in question, prior to the discovery of the fire. The
evidence shows that the fire started in the hay near the
roof of the barn, on the south side nearest defend-
ant's track. There was evidence that cinders were
strewn upon the ground from defendant's track to
within something like twenty-five feet of the barn, and
at the latter distance from the barn a coal cinder was
found upon a blade of corn, which had retained suffi-
cient heat to blister the cornblade. It was shown by
the witness Whitlock that sparks from defendant's en-
gines had been seen at night to fly as far from the

track as this barn was situated, and to remain hot enough to be red.

Conceding, for the time being, the competency of the testimony of the witness last referred to, and taking into consideration all of the evidence, we should say that it was sufficient to make it appear highly probable that the fire was communicated by a spark from defendant's engine. It is true that the distance of plaintiff's hay from the track of defendant is quite great. We have been pointed to no case, and know of none, where a recovery has been had upon the theory that sparks or coals from a locomotive engine were carried so great a distance from the track, and retained sufficient life to set out a fire. However, under the facts of the case, we think that this distance was not such as to make it unreasonable to suppose that the fire originated in the manner alleged by plaintiff. The distance to which sparks or burning cinders may be blown will of course depend upon the velocity of the wind; and the length of time that they may retain sufficient heat to ignite combustible matter will depend to a great extent upon the weather conditions. Here the evidence shows that the weather conditions were about the most favorable that could be well imagined for setting out fires at a great distance by sparks from an engine. This coupled with the fact that the evidence suggests no other possible origin of the fire, and the further fact that it began near the roof of the barn, in the hay stored on the side thereof nearest to the railroad, would lead only to one possible inference, and that is that it was started by a live spark or coal of fire from defendant's engine.

The only evidence that sparks or cinders from defendant's engine could be carried anything like so great a distance as we have here, was the evidence that a coal cinder had been found on a blade of corn twenty-five feet nearer the railroad track than the barn, and which had retained sufficient heat to raise a blister

upon the blade, and the testimony of the witness Whit-
lock to the effect that he had frequently seen sparks
from defendant's locomotives, attached to passenger
trains, fly, at night, from the railroad track to where
the barn was situated, and remain red and burning.

The competency of the latter testimony is chal-
lenged by the appellant upon the ground that it was
not shown that wind and weather conditions were the
same upon the occasions concerning which the witness
was testifying, as they were upon the day that the hay
and barn were burned. In support of this contention
we are cited by appellant to Fritz v. Railroad, supra,
where it is said by LAMM, J.: "It is true that testi-
mony is permitted in this character of cases to show
the ability of locomotives to throw sparks to this, that
or the other distance, and when so sworn to, show they
ignite combustible matter. But the value of that sort
of testimony, in the nature of things, should be lim-
ited to similar conditions of wind and weather and sur-
rounding circumstances."

We do not understand, however, that, by the lan-
guage there used, the Supreme Court meant to depart
from the established rule that it is competent to show
that live sparks from other engines of the defendant
have been known to be carried over as great a distance
as that involved in the particular case. In Campbell
v. Railroad, supra, the court said of evidence of this
character: "We think the evidence tended to prove
the possibility, and consequent probability, that the
fire was communicated to plaintiff's property from one
of defendant's engines, and that the evidence was ad-
missible and its probative force was for the determi-
nation of the jury."

In Matthews v. Railroad, 142 Mo. l. c. 656, 44 S.
W. 802, the court said: "A witness was permitted, on
the trial, to testify to having seen, subsequently to the
fire, a spark from an engine on defendant's road strike
the center pole of a tent which had been erected on the

site of the barn. It is objected that it was not first shown that the engine was of the same kind or in the same condition as the one from which, alone, the fire could have originated; nor was it shown that the condition of the weather or the direction and force of the wind was the same as it was on that occasion. This objection is fully answered in the opinion in Campbell v. Railroad, 121 Mo. 349, in which it was held that the evidence was competent as tending to prove the possibility, and consequent probability, that the fire was communicated to plaintiff's property by sparks from one of defendant's engines."

What was said in the Fritz case evidently refers to the value of such testimony, where similar conditions of wind and weather are not shown, rather than to its competency. In that case the weather was cold and damp; and testimony that sparks had been carried a particular distance, and remained alive, under more favorable weather conditions, could have little or no value. In the case before us, however, as we have said, the conditions of wind and weather were about as favorable as could well be imagined for sparks to be carried a great distance and set out fires. When plaintiff's hay was destroyed, not only was the weather extremely dry, but the evidence shows that the velocity of the wind was such as to carry pieces of shingles from the burning barn as far as a half or three-quarters of a mile distant. Hence, what was said in the Fritz case as to the value of this character of testimony could have no application here.

We think that plaintiff's evidence was sufficient to take the case to the jury, and that defendant's demurrer thereto was properly overruled. And what we have said above disposes of appellant's contention that the verdict is based upon conjecture and speculation. No error is assigned with respect to the instructions, and no point is made as to the amount of the verdict.

The judgment of the circuit court is affirmed. *Reynolds, P. J.,* and *Nortoni, J.,* concur.