Kinkead, J.
(Orally).
I did not intend to have the jury present, but in view of my conclusion it does not make any difference.
I will undertake to announce the reasons for the conclusion reached — not in as methodical order as I would like; trial judges have to press hard on the bit all the time and do not have the time to get their thoughts together in as good order as does a reviewing court.
I have given this case more than ordinary attention from the time it began, as it presents an interesting point of practice.
The evidence offered by plaintiff discloses that the fire was first discovered by the night watchman when he was in the boiler room, while he was engaged in the act of taking ashes from the boiler. He happened to think that it was his time to report, and he went to the clock; and while about that task he says he discovered smoke. He found the fire on the east side of *530 the sawmill building. The witness states that in looking for the fire he was probably forty or fifty feet from the engine room. The fire originated on the east side of the building among pieces of bark and slats, edging sawed off from the rip saw. The fire was located at the edge of the shed. The watchman states that when he went back near the boiler wall he saw the fire under the floor. He testifies, using his language, “It seems I heard or saw an engine, or something, go up, but I could not tell positive at what time it was.” In answer to a question, “Where were you when you observed this,” he stated that he was in the boiler room. The witness did not state positively that he heard an engine, or, as he uses the language, “he heard something go up.” He qualifies himself by stating that he would not ¡state positively.
The testimony of the night watchman does not establish any fact concerning any train or engine passing along the railroad. It consists of mere guess ¡and speculation. The remaining evidence offered by plaintiff consists of testimony of train dispatchers and operatives of trains or engines as to the movement of trains or engines along the line of defendant’s railroad near the time of the fire.
The fire originated some time very shortly before 5:35 p. m., at which hour the alarm was turned in. The testimony concerning the movement of trains or engines tends to show that certain trains or engines passed at Fifth avenue and^ First avenue. The train dispatcher located at First avenue testifies as to engines numbered 9822 and 7380 passing his station going north. Yard engine numbered 7380 passed the Fifth .avenue station, but Tucker states he has no further record of the movements of that engine for the reason that stations north were closed. Engine 7380 returned to First avenue at 5:39. Tucker states that he sent 7380 up on the hill to help out No. 10, which was stuck. Tucker’s evidence does not show where the hill was located. Conductor Holt testifies that he was working around the Fair Ground ¡and went south, passing the hoop factory, and that they usually turned in at six o ’clock. The inference is that this work engine passed plaintiff’s place, but at what precise hour does *531 not appear. Engine No. 6823 left Walsb at 4:36 and arrived at 4:45. The next number passing the station of the train dispatcher was No. 35, .a south-bound passenger train. It left Walsh at 4:36 and arrived at Fifth avenue at 5:07. That is the only engine or train that passed the hoop factory near the supposed time when the fire probably originated. All we have touching the movement of engine No. 7380 is the statement by Tucker as to the time it left .and returned. The statement by Tucker that he sent it to help No. 10 over the hill must be regarded as incompetent — that is, his mere statement of Avhat he sent it for. His evidence that it left his station and that it returned at 5 .-39 and all of the information that he gathered from the train sheet would be regarded as competent. Where it went and what it did does not appear by competent evidence. It appears, however, that No. 10 was a passenger train and that it passed Fifth avenue station at 4:05 .and passed Walsh station at 4:22. In giving the trains passing Tucker, a station after Panhandle No. 920, which passed at 5:11 going north, Tucker states that the next one to pass his station w.as at 5:13, being yard engine 7380), which followed the passenger train, Avhich must have been the Panhandle train, although it does not appear Avhat character of train it was in the other places; and that it passed Fifth avenue. Even if AA'e should consider Tucker’s testimony that he sent 7380 to assist No. 10, which I say we can not do, the competent evidence shoAvs that No. 10 passed Walsh going north at 4:22. It folloAvs that if engine No. 7380 passed Tucker’s station following Pennsylvania train No. 920, train No. 10 Avould probably be gone before the other engine reached its assistance. Or, if that be not so, and we are indulging in supposition upon incompetent testimony, if 7380 by any stretch of imagination actually did go to the assistance of No. 10, it would have consumed the t-ime between 4:22, Avhen No. 10 left Walsh, until 5:39, when it returned to its station, which is .altogether too much time to be consumed in that act.
Opposing this evidence, brought out, in the development of plaintiff’s case, we have the fact that the night watchman continually smoked; that about every employee about the establish *532 ment smoked about the premises. And then there is the testimony that some of the men would pass out of the door of the boiler room where the night watchman first discovered the smoke. There is also the testimony that sometimes a sparks shot out from the stacks when they were probably putting in more fire.
It is to be observed that at this stage of the case there is no disputed evidence. There is no conflict in the evidence offered by either side. The evidence offered by the defendant consisting of the various witnesses called, who were employees, does not contradict anything that is claimed by the plaintiff. It is an effort on both sides to make the facts appear to be as they actually were. Another reason for that comment will be made afterwards. This court is, therefore, considering this case not only upon a motion made at the close of the plaintiffs’ case, as Mr. Rector will have it, to direct a verdict, or, as I would prefer it, to direct a non-suit, but the court is also called upon at this stage of the ease to consider, and may consider, all of the evidence in arriving at its conclusion, if there is no dispute. It máy enter up a judgment one way or the other upon the undisputed testimony, or upon the undisputed evidence. The question, however, presented by a motion interposed at the close of plaintiffs’ case and renewed at the close of all the evidence, is whether there is any evidence which tends to prove or disclose an inference that fairly and reasonably shows that the fire was probably caused by a spark or sparks emitted by an engine operating on the line of railroad of the defendant.
It is stated in the case of Red River Lead Co. v. Railroad Co., 123 Mo. App., 394, cited by counsel for the plaintiff—
“A bare possibility that sparks from an engine on defendant’s line might have kindled the fire would not, it seems to us, justify a finding that it was thus kindled. We think the testimony ought to go to the extent of proving the probable origin of the fire was cinders or sparks emitted from an engine.”
The court in that ease adverted to the fact that it was not necessary for it to consider whether or not a mere possibility would be sufficient to carry the case to the jury, and stated that *533 it was not called upon to consider the question, because there was a reasonable probability presented by the evidence which was sufficient to warrant the submission of the case to the jury.
In this state it is well understood that the measure of proof that is the standard of our course of procedure is that only the appearance of truth must be shown, and, therefore, a probability is sufficient upon which to found a conclusion, a verdict and judgment. A probability is an element which addresses itself to the reason. A. jury may determine an issue of fact as its probability or improbability may appear to it from the evidence. Probability is a state of being probable. To conclude that there is a probability of the existence of a fact, a reason for believing in the existence of such fact must be ascertained. If there is no reason for such belief, there is no probability of the existence of such fact. Moody v. Peirans, 4 Cal. App., 411; Ins. Co. v. Weide, 11 Wall., 438; Mims v. State, 141 Ala., 93.
And then again, as some courts have put it:
“To conclude that an act probably occurred from a given cause is to decide that more evidence shows it to have been so caused than does any opposing evidence disclose it to have been otherwise caused, although it leaves some room for doubt.” 34 Wash., 379; 29 Okla., 19; 8 Cal. App., 420.
There is a marked distinction between a probable cause and a possible cause, and to aid it the following definitions or conception of what constitutes a possible or probable act are cited. Results or acts which are only possible can not be spoken of or considered as either probable or natural. What is probable or natural are such events, acts or results from acts which are likely to happen, and which for that reason may be reasonably foreseen. Things, acts or results which are merely possible may never happen, while those that are natural or probable are those which do occur or are likely to happen, and may become a matter of inference and conclusion. (See 209 Pa., 128; 117 Pa. St., 300; 2 Am. St., 672.) Things, acts or events that are regarded as only possible do not warrant or justify an inference, and hence are not subject to judicial cognizance.
*534 P., C. & St. L. Ry. v. Scherer, 205 Fed., 357:
“Where one of two or more things may have been the canse of an injury, for one of which defendant is responsible and for the others of which he is not, it is not permitted to speculate between the several causes, and to find that defendant’s negligence was the real cause, in the absence of satisfactory foundation in the testimony for that conclusion.”
L. & N. R. Co. v. Bell, 206 Fed., 395 (Warrington, Knappen, Denison, Judges):
“The jury may not infer defendant’s causal relation to plaintiff’s injury, yet plaintiff’s evidence need not exclude every other possible source of injury; it is sufficient if the inference of defendant’s liability is fairly and reasonably probable and distinctly more probable than other suggested explanations.”
R. R. v. Jones, 192 Fed., 769, op. p. 774. Opinion by Warrington, J., quoting from opinion of district judge:
“It is true that where the testimony leaves a matter uncertain, showing that a number of things may have brought about the injury, * * * the facts should not be left to the jury to be determined upon mere probability, thereby turning them loose in the field of conjecture and leaving the matter to be determined by guess. (Sanborn, Dist. J.)
“Where there is a reasonable inference from circumstantial evidence, of a substantial character, indicating that the accident was due to the defendant’s negligence and breach of duty for which it was responsible, as distinguished from mere speculation and guess.”
In trials of fact the proof comes either from those who speak from actual personal knowledge of the existence of fact, or it is to be inferred from other facts, the probable truth of which is established. A fact in dispute may be shown in part by direct and part by inference. That which is shown by persons having personal knowledge is direct evidence; proof of collateral facts which, have a connection with the fact in controversy is circumstantial evidence.
It is not necessary in legal procedure to be absolutely certain of the existence of a fact pit only need to appear that a claim is *535 probably true, and, therefore, it logically follows that there may be some room for doubt in the minds of the triers of fact when it is decided that a fact is probably established. The measure of proof upon which we found judgment and action in civil actions, of course, is wholly unlike that in criminal procedure where the triers of fact must be convinced of the guilt of the accused beyond a reasonable doubt. Even in the latter class, absolute certainty is not required.
This case rests wholly upon circumstantial evidence, and to the division thereof classed as uncertain, when the conclusion does not necessarily follow but is probable only, and is obtained by a process of reasoning and inference. I think this rule has much force in the consideration of this question. We seldom encounter a case where the line must be drawn so closely between a probability and a possibility as must be done here.
This ease depending upon circumstantial evidence, involves a process of deduction and inference. Circumstantial evidence consists of proof of certain facts and circumstances, from which the jury may infer other connected facts which usually and reasonably follow according to common experience. Evidence of this character is classed as certain and uncertain: (1) Certain,
where the conclusion in question necessarily follows; (2) uncertain, when the conclusion does not necessarily follow, but is probable only, and is obtained by a process of reasoning and inference. Note, 97 Am. St., 772-73. The court in passing upon a motion for a directed verdict, indulges in the same process as would the triers of fact. The court is called upon, in the first instance, to determine whether or not this inference reasonably an'd fairly supports a probability; whether it tends fairly and reasonably to support a probability. If it does, then the question is one for the jury; if it does not so tend, then it is a question of law for the court.
The inference to be drawn from all the circumstances must be such as to show a fair and reasonable probability that the fire was caused by an engine of the defendant. If such inference is not supported by a fair and reasonable basis, if it rests wholly on guess and conjecture, then there is nothing for the jury to *536 decide. The fact that liability is imposed -upon railroad companies for loss by fires regardless of the exercise of reasonable or due care, in no way differentiates such liability from others founded upon pure neglect, so far as concerns the usual and ordinary process of determining fault and liability. So I take it that this court is warranted in acting as the court did in the Big Four cgse cited here, McQuade v. Big Four Railroad, a ease which had been tried by two branches of this court, a verdict rendered in favor of the plaintiff in each case, and set aside in each instance. The case went to our court of .appeals, and was reversed and came back and was tried the third time, when judgment of non-suit was entered up. It involved the determination of how a man came to his death. It involved the same process of reasoning by inference-. Reasoning by inference in a case like that is not different from the process of reasoning in a ease like this.
If it is made clear in any case that a jury can not arrive at a conclusion except by speculation and guess, there is nothing to be submitted to it.
The case presented here differs wholly from others cited involving fires by railroads. It may not be worth while referring to it, but the case cited from Missouri, mentioned a moment ago, is where a barn located along the line of the railroad had caught fire supposedly by sparks emitted from an engine which dropped upon the roof. Red River Lead Co. v. I. M. & S. R. Co., 123 Mo. App., 394; 101 S. W., 636. It appears that the grade at the point involved was quite heavy, the effect being to increase the difficulty of drawing the trains over the track, and to draw them a strong head of steam was required, causing them to throw cinders and sparks to a considerable distance.
In the present case counsel for plaintiff sought to draw the inference that engine 7380 when it was supposed to have gone north to help No. 10 over the hill would go in such a manner that possibly it would emit sparks. The court was right in eliminating that engine altogether, because, as the evidence was analyzed, it has not been made to appear here at all, except by conjecture .and supposition, that that engine went up to help No. *537 10 out. On the contrary, the reasonable inference from the time alloted and the distance, would tend to show otherwise. Furthermore, the evidence of the engineer and of the fireman upon that engine was to the effect that the train had not been above Fifth avenue.
There is no conflict in the evidence since the court considers the statement by Tucker that he sent an engine upon the hill as incompetent evidence, because it is not a part of the train sheet or of the record he kept. It is a volunteer statement. Such a thing might have happened that he sent it there and that it never went. Of course, it is not competent. It clearly shows from the deduction made by the court from the actual dates and times of engines and trains from evidence not in dispute, that such testimony as that of Tucker, rejected by the court, is not sufficient to found judgment upon.
Another observation is made. So far in this state it 'has never been held that the evidence which this court permitted to go in of the witnesses who testified that they had observed sparks going from an engine passing along the highway as far as the distance between where this fire took place and the train, was competent evidence. The evidence that was offered in the Missouri case (123 Mo. App., 344) and the evidence that was offered in the federal case (206 U. S.‘, 395) is wholly unlike that which was offered here. The .court was liberal in the beginning in allowing that to go in; it postponed the time of exercising its judgment until it felt reasonably certain of the proper conclusion.
Therefore, the judgment of the court is that upon the evidence offered by the plaintiffs in support of their case, as well as upon all of the undisputed evidence, the plaintiffs are not entitled to recover, and therefore a verdict is directed in favor of the defendant.
Mr. Hoover: Note an exception on behalf of the plaintiffs.