## CECIL DAWSON et al., Respondents, v. CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals. Argued and Submitted February 8, 1917. Opinion Filed March 6, 1917.

1. **TRIAL PRACTICE: Demurrer to Evidence: Rules of Decision.** A demurrer to plaintiff's evidence accepts that evidence as true, whether contradicted by defendant's proof or not, so long as it is not impossible as opposed to the physics of the case or entirely beyond reason; it takes defendant's testimony as untrue, where contradicted by plaintiff's proof, and leaves to the jury to settle the weight due the testimony, the credit due the witnesses, and to reconcile contradictions, allowing plaintiff's case the benefit of every reasonable inference of fact arising on all the proof.

2. **RAILROADS: Fires: Destruction of Property Adjacent to Right of Way: Physical Facts.** In an action against a railroad company for

Dawson v. Railroad.

the destruction of a building by fire, alleged to have been caused by defendant's negligence in permitting sparks to escape from a locomotive engine, which set fire to a building next to the right of way, which fire, in turn, was communicated to plaintiff's building, *held* that the evidence introduced by plaintiff was not unreasonable nor opposed to the physics of the case.

3. ———: ———: ———: **Admissibility of Evidence: Records Kept Under Orders of Interstate Commerce Commission.** In an action against a railroad company for the destruction by fire of property adjacent to its right of way, alleged to have been caused by sparks which escaped from one of its locomotive engines, "block sheets," showing the movements of trains, which the Interstate Commerce Commission required defendant to keep, did not constitute physical facts, so as to be conclusive of the issue of whether or not a train passed at the time in question; the sheets, at most, if properly authenticated, being at most merely prima-facie evidence.

4. ———: ———: ———: **Sufficiency of Evidence.** In an action against a railroad company for the destruction of a building by fire, alleged to have been caused by defendant's negligence in permitting sparks to escape from a locomotive engine, which set fire to a building next to the right of way, which fire, in turn, was communicated to plaintiff's building, it was shown that, at the time the person who was last in the building that first took fire left such building, it was not on fire; that such person had used no matches in the building; that the fire broke out shortly after he left, and immediately after the passing of a freight train on defendant's road, which was laboriously pulling up grade, hauling a number of cars; that the fire originated in dry grass and vegetation between defendant's tracks and the walls of the building that first took fire; that the wind was blowing from the railroad tracks in the direction of the building; and it appeared that, unless the fire originated from sparks thrown by the passing locomotive, it would be impossible to account for it on any other possible theory. *Held*, that the evidence was sufficient to warrant a finding that the fire was started by sparks from a locomotive engine operated by defendant, and, therefore, that it was proper to submit the case to the jury.

5. ———: ———: ———: **Measure of Damages: Instructions.** In such a case, *held* that the instruction on the measure of damages was more favorable to defendant than it was entitled to have.

6. ———: ———: ———: **Damages: Amount of Recovery.** In such a case, *held* that a verdict for $2990 was warranted by the evidence.

7. **VERDICTS: Verdict by Nine Jurors.** A verdict by nine jurors, in a civil case, is as conclusive as one by twelve, and prejudice does not appear from the fact that it was concurred in by only nine.

8. **TRIAL PRACTICE: Argument of Counsel: Comment on Missing Evidence.** In an action against a railroad company for the de-

struction by fire of property adjacent to its right of way, as a result of sparks emitted by a locomotive engine, where defendant introduced certain "block sheets" in evidence, showing the movement of trains, the absence of other sheets relating to the movement of such trains was a proper matter for comment by plaintiff's counsel in his argument to the jury.

Appeal from Monroe Circuit Court.—*Hon. William T. Ragland,* Judge.

AFFIRMED.

*O. M. Spencer, F. W. McAllister, R. S. McClintic, J. C. Carr* and *M. G. Roberts* for appellant.

(1) The instruction in the nature of a demurrer to the evidence offered by the defendant at the close of all the evidence in the case should have been given for the following reasons: (a) Section 20 of the Interstate Commerce Act provides that any person who shall wilfully make a false entry in any record or memoranda kept by an interstate carrier, or who shall wilfully alter or falsify the record of any such record or memoranda, or who shall willfully neglect or fail to make true and correct entries therein, shall be deemed guilty of a crime and is subject to imprisonment. The statute further provides that the Commission may prescribe the forms of the records and memoranda "of the movement of traffic" and the Commission is authorized to make an order specifying such operating records, blanks or discounts which the carrier may destroy after a reasonable time. Pursuant to this power the Commission made an order requiring such records, of which the courts will take judicial notice. The books, records and papers introduced by the defendant in this case are not private memoranda, but are public documents, in which true and correct entries are required to be made under penalty of law. All these records introduced in this case tally with and dove-tail into one another so accurately and correctly that they carry in themselves their own inherent evidence of absolute verity and utterly destroy plaintiffs' claim that a train passed Monroe

at noon on December 26, 1912. Caha v. United States, 152 U. S. 211, 222. When the testimony is in the form of documents, the advantage which a jury is supposed to have over an appellate court in passing upon the evidence does not exist. Neil v. Cunningham Store Co., 149 Mo. App. 43, 1. c. 58. (b) The defendant recognizes that in passing upon a demurrer to the evidence, the oral proof of the plaintiff must ordinarily be taken as true and the defendant's oral testimony in conflict therewith must be assumed to be false. However, in this case, the circumstances shown by the plaintiffs to establish their theory (even assuming a train passed), are in harmony and consistent with the defendant's theory of the origin of the fire. When an inference that the fire was not communicated from a locomotive is as strong as the inference that it was so caused, the plaintiff is not entitled to recover. Bates County Bank v. Missouri P. Ry. Co., 98 Mo. App. 330, 1. c. 336; Peck v. Missouri P. Ry. Co., 31 Mo. App. 123; Hudspeth v. St. Louis & S. F. R. Co., 1726 Mo. App. 579, 1. c. 585, 586. (c) While under the Missouri statute a railroad company is liable for property destroyed by fire communicated directly or indirectly by locomotive engines, yet the plaintiff must still prove that the fire was actually communicated to his property by one of defendant's locomotives. Foster v. Missouri P. Ry. Co., 143 Mo. App. 547, 1. c. 553; Fritz v. St. Louis, I. M. & S. Ry. Co., 243 Mo. 62; Hudspeth v. St. Louis & S. F. R. Co., 172 Mo. App. 579; Kelly v. Wabash R. Co., 151 Mo. App. 306; 33 Cyc. 1384, 1385; 13 Am. & Eng. Ency. of Law (2 Ed.), p. 512; Taylor v. Lusk, — Mo. App. —, 187 S. W. 87, 1. c. 98; Vanderburgh y. St. Louis & S. F. R. Co., 146 Mo. App. 609. (d) Where the testimony and all the surrounding circumstances in the case are such as to raise a strong inference or presumption that the verdict of the jury was the result of partiality, prejudice or passion, the appellate courts will not hesitate to set the verdict aside. In this connection the court will consider that but nine jurors concurred in the verdict. Copeland v. American Central Insurance

Co., 191 Mo. App. 435, l. c. 448. In each of the following cases the appellate courts set aside the verdict because the preponderance of the evidence against the verdict was so strong as to raise a presumption of prejudice, bias or corruption on the part of the jury: Lehnick v. Metropolitan St. Ry. Co., 118 Mo. App. 611; Gage v. Trawick, 94 Mo. App. 307; Friesz v. Fallon, 24 Mo. App. 439; Holt v. Morton, 53 Mo. App. 187; Hewitt v. Doherty, 25 Mo. App. 326; Lionberger v. Pohlman, 16 Mo. App. 392; Walton v. Kansas City, Ft. S. & M. Ry., 49 Mo. App. 620; Empey v. Grand Ave .Cable Co., 45 Mo. App. 422; Tucker v. Chicago & A. R. Co., 66 Mo. App. 141; Cook v. Missouri P. Ry. Co., 94 Mo. App. 417; Kennedy v. St. Louis T. Co., 103 Mo. App. 1; Spiro v. St. Louis T. Co., 102 Mo. App. 250; Harper v. St. Louis & S. F. R. Co., 186 Mo. App. 296; Garrett v. Greenwell, 92 Mo. 120; Spohn v. Missouri P. Ry. Co., 87 Mo. 74. (2) The second paragraph of plaintiff's instruction No. 2 defining circumstantial evidence, being the only definition of circumstantial evidence given to the jury and in which the jury were told that the burning of the building by sparks might be established by showing "such other facts and circumstances as will fairly and naturally lead to the inference of their existence, and it does not devolve upon the plaintiffs to produce proof excluding other possible origin of said fire," was palpably erroneous and misleading for many reasons: (a) It is not a correct definition of circumstantial evidence in civil cases. Evidently the writer of this paragraph had in mind what was necessary ·to be shown in order to have the cause submitted to the jury. It is one thing to say as a legal proposition what facts and circumstances are sufficient to "get by" a demurrer so that the case will reach a jury; but it is quite another thing to properly define circumstantial evidence in an instruction when the case is finally submitted to the jury. The second clause of plaintiffs' instruction No. 2 was plainly wrong for this reason. Copeland v. American Central Ins. Co., 191 Mo. App. 435, 452; Price v. St. Louis, I. M. & S. Ry. Co.,

185 Mo. App. 432, 436; Rice v. Detroit Fire and Marine Ins. Co., — Mo. App. —, 176 S. W. 1113, 1119; Taylor v. Lusk, — Mo. App. —, 187 S. W. 87, 98; Culbertson v. Hill, 87 Mo. 553, 556; Foster v. Missouri P. Ry. Co., 143 Mo. App. 547, 552; Fritz v. St. Louis, I. M. & S. Ry. Co., 243 Mo. 62, 77. Plaintiffs' counsel evidently used the language of this court in Gibbs v. St. Louis & S. F. R. Co., 104 Mo. App. 276, 281, but the court was there discussing the sufficiency of the evidence on the presentation of a demurrer and not the elements of an instruction to the jury on circumstantial evidence. See, also, Tapley v. St. Louis & H. Ry. Co., 129 Mo. App. 88, 92. (b) To justify a finding upon circumstantial evidence that the property was destroyed by locomotive sparks, the facts and circumstances must be such as to satisfy the minds and consciences of the jury to a reasonable certainty that the fire was in fact caused by sparks and not merely by proof of "facts and circumstances leading thereto." See authorities under subdivision a; Copeland v. American Central Ins. Co., 191 Mo. App. 435, 452; Taylor v. Lusk, — Mo. App. —, 187 S. W. 87, 98; Price v. St. Louis, I. M. & S. Ry. Co., 185 Mo. App. 432, 436. (c) The clause to the effect that "it does not devolve upon the plaintiffs to produce proof excluding other possible origin of said fire" was erroneous and misleading, because in attempting to give a definition of circumstantial evidence in this class of cases, plaintiffs should have asked a correct one. When a plaintiff is seeking to show that his property was destroyed by sparks from a locomotive engine by proof that a train passed and that soon thereafter fire was discovered, i. e., circumstantial evidence, he must go further and produce evidence tending to show that it was impossible for the fire to have resulted from some other cause. Fritz v. St. Louis, I. M. & S. Ry. Co., 243 Mo. 62; 33 Cyc. 1384, 1385; 13 Am. & Eng. Ency. of Law (2 Ed.), p. 512; Vanderburgh v. St. Louis & S. F. R. Co., 146 Mo. App. 609; Hudspeth v. St. Lous & S. F. R. Co., 172 Mo. App. 579; Kelly v. Wabash R. Co., 151 Mo. App. 306; Elliott on Railroads, sec. 1243;

Foster v. Missouri P. Ry. Co., 143 Mo. App. 547, 553; (d) The last mentioned clause of said instruction is also calculated to mislead the jury by leading them to believe they could ignore evidence tending to show other possible causes of the fire. (3) The third paragraph of plaintiffs' instruction No. 2 in which the court charged the jury that if they found that sparks were emitted from the locomotive of a passing train and that shortly thereafter fire was seen to start on the right-of-way in vegetation, they might, from these facts, infer that the destruction of plaintiffs' property was caused by a spark, assumed disputed facts to be true, was a comment on the evidence, invaded the province of the jury, singled out the testimony of two witnesses for the plaintiffs to the entire exclusion of all of the defendant's evidence, and was, in addition, erroneous as a matter of law. Similar instructions have been repeatedly condemned by the Missouri courts for the following reasons: (a) When the law presumes a fact from one or more other facts, then the court may so instruct the jury; but a court is never warranted in telling the jury what conclusions of fact they may draw from some other fact or collection of facts, for it is the sole province of the jury to draw inferences of fact and not of the court. McDermott v. Barnum, 19 Mo. 205, 207; Lesser v. Boeckhoff, 33 Mo. App. 223, 237; Steinwender v. Creath, 44 Mo. App. 356, 366; Gilliam v. Ball, 49 Mo. 249; 38 Cyc. 1672; McQuillin on Instructions, sec. 113, p. 84, Sec. 118, p. 90; Smith v. Woodmen of World, 197 Mo. 119, 137; Swink v. Anthony, 96 Mo. App. 420, 426; Chouquette v. Barada, 28 Mo. 491, 498; Disbrow v. People's Ice, Storage & Fuel Co., 138 Mo. App. 56; Schneer v. Lemp, 17 Mo. 142, 145. (b) Such a commentary by the court in the instructions by telling them what conclusions they may infer from a particular fact, is vicious, for its tendency is to give the jury an exaggerated estimate of the evidentiary value of such a fact and to minimize the importance of defendant's evidence. The jury should be left free to weigh all the facts in evidence bearing upon the issue in the scales

of their judgment without any restriction of the freedom of their judgment by throwing into the scales the court's opinion as to the sufficiency or the probative value of a particular fact. Lesser v. Boeckhoff, 33 Mo. App. 223; Gage v. Mears, 107 Mo. App. 140, 147. (c) By this instruction the court specifically called the attention of the jury to the testimony of two witnesses for the paintiffs and entirely excluded therefrom the facts and circumstances bearing on the same issue introduced by the defendant. This was erroneous. Carroll v. Paul's Admr., 16 Mo. 226, 239; State v. Smith, 53 Mo. 267, 271; Union Seed and Fertilizer Co. v. St. Louis, I. M. & S. R. Co., — Ark. —, 181 S. W. 898. (d) This instruction further assumed as true an issue which was contested during the trial, that is, as to whether there was vegetation on the right-of-way near the lumber yard. (e) Besides, the instruction does not correctly state the law as to the right of a jury to make the inference in question. When the plaintiff is seeking to show by circumstantial evidence that his property was destroyed from sparks of a passing train, it is not sufficient for him to merely show that a train passed emitting sparks, and that thereafter fire was discovered on the right-of-way. He must go further and produce evidence, in addition thereto, tending to show that it was improbable for the fire to have resulted from some other cause. Foster v. Missouri P. Ry. Co., 143 Mo. App. 547, 553; Fritz v. St. Louis, I. M. & S. Ry. Co., 243 Mo. 62; 33 Cyc. 1384, 1385; Big River Lead Co. v. St. Louis, I. M. & S. Ry. Co., 123 Mo. App. 394, 399-405; 13 Am. & Eng. Ency. of Law (2 Ed.), p. 512. (f) This paragraph of said instruction is also fatally defective in that it did not require the jury to find the sparks were seen to be falling in the vicinity of the grass where the fire is alleged to have started, but permits the jury to find for plaintiff if engine was seen to be emitting sparks anywhere in the town of Monroe City, even if a mile from the right-of-way grass wherein the plaintiffs allege the fire started. (4) The plaintiffs' instruction No. 3 on the measure of damages was erro-

neous, because the measure of damages when a building is destroyed is not the difference between the value of the real estate before and after the fire, but is the reasonable value of the building at the time it was destroyed. 33 Cyc. 1392. Matthews v. Missouri P. Ry. Co., 142 Mo. 645, 664; Vanderburgh v. St. Louis & S. F. R. Co., 146 Mo. App. 609, 613; 3 Elliott on Railroads (2 Ed.), sec. 1239, pp. 547, 548.

*J. P. Boyd, Roy L. Meriwether, Berryman Henwood* and *Charles T. Hays,* for respondents.

(1) (a) Respecting defendant's contention that plaintiff's instruction No. 3 on the measure of damages was erroneous, it will be conceded that the instruction unduly limited the damages to the difference in value of the realty before and after the fire. But the error, if any, was against the interest of the plaintiffs and in favor of the defendant, and hence not prejudicial. Matthews v. Mo. Pac. Ry., 142 Mo. 664. (b) Defendant's counsel made the following concession in his opening statement: "Plaintiffs' buildings were destroyed, no question about that. If you find from the evidence that a train went through there at noon, I hope you will return a verdict for the plaintiffs for the full value of the property." There was really no controversy over the amount of damages or the measure thereof. The evidence was all one way on the subject, received without objection, and defendant's counsel did not even cross-examine thereon. It was to the effect that the buildings were new and were totally destroyed, and that the difference in the market value of the property immediately before and after the fire was $3250 to $3400, and that at the time of their destruction that was the value of the building. That proof was sufficient. Smith v. Kansas City, 128 Mo. 31. Under the circumstances the court would have been warranted in giving an instruction assuming the amount of damages within the limits fixed by the evidence. Taylor v. Iron Co., 133 Mo. 349. (c) If plaintiffs' instruction No. 2 was erroneous the giving of it does not constitute prejudicial

197 M. A.—12

error.   Brink v. K. C., etc., Ry., 17 Mo. App. 178.   (d)
It was not necessary for the instruction to exclude
every reasonable possibility of the fire having some
other source.    Taylor v. Lusk, 187 S. W. 88-89.    The
instruction is completely supplemented by defendants'
instruction No. 2 and plaintiffs' other instructions, and
they will all be construed together.   Lemser v. Mfg.
Co., 70 Mo. App. 218; Gibler v. Terminal Ass'n, 203
Mo. 222; Lange v. Railroad, 208 Mo. 478.   It is not
a singling out or a comment to group together the facts
and circumstances which are sufficient to make a prima
facie case and tell the jury what legal effect they may
give them.   Menx v. Haller, 179 Mo. App. 466, 475;
Nicholson v. Golden, 27 Mo. App. 154; Devitt v. Rail-
road, 50 Mo. 305; Dunn v. Henley, 24 Mo. App. 581.
(2) (a)   The point attempted to be made by the de-
fendant, that the verdict is the result of passion and
prejudice, and should be set aside by this court on that
ground, is not contained in the specification of errors
and hence is not before the court.   However, since de-
fendant has made the complaint in its brief, it may not
be amiss to say that it is very apparent this case affords
no ground for the exercise by this court of the sug-
gested power which it concededly possesses in the super-
intending control of trial courts.    The rare exercise
of this extraordinary power is confined to the type of
cases cited by defendant on this point,—cases where the
plaintiff is contradicted by all the evidence; or where all
the evidence points in one direction, or where the ver-
dict is against the successful  party's  admissions,  or
against the conceded facts, or is not supported by any
substantial testimony; or where the verdict is so grossly
excessive as to shock the conscience, or is against the
physical facts; or where the jury has disregarded the
instructions.   In no respect is this case of a type fall-
ing within the limits of that power.   Linderman v. Car-
min, 255 Mo. 71; Huth v. Doble, 76 Mo. App. 671, 675;
Zellars v. Mo. Water, etc., Co., 92 Mo. App. 120.   (b)
But in reality the question of the origin of the fire is,
upon the record herein, purely a moot question; not

only because of defendant's conduct and admissions, but because there is no substantial testimony in the record to support defendant's so-called theory of the origin of the fire. Such testimony is triviality itself. Lead Co. v. Railroad, 123 Mo. App. 400; Fields v. Railroad, 113 Mo. App. 648; Tapley v. Railroad, 129 Mo. App. 91; Root v. Railway, 195 Mo. 364; Grand Trunk R. Co. v. Richardson, 91 U. S. 458; Wabash S. D. Co. v. Block, 61 C. C. A. 640; L. & N. R. Co. v. Bell, 124 C. C. A. 280. (c) The percentage of conclusiveness of the verdict is not dependent upon the number, above eight, of the jurors concurring. That nine agree does not render the virdict seventy-five per cent. good, nor ten eighty-three and one-third per cent., and so forth. To question the verdict because not unanimous is aganst public policy under the provision of the Constitution as amended. As well might this court, in passing upon a ruling on demurrer in a criminal case, consider that while the verdict of the trial jury was unanimous, only nine of the grand jurors concurred in the indictment as a true bill. If such considerations are germane, surely. the fact is germane that since the trial herein the plaintiffs as co-partners recovered a unanimous verdict in the Federal court for the destruction by the same fire of their copartnership personal property contained in the building destroyed. (3) The demurrers to the evidence, or motions for a directed verdict, for lack of proof, were properly denied. (a) The general rules of evidence governing the weight and sufficiency of evidence in civil cases apply in actions against a railroad company for damages by fire. The evidence may be direct or circumstantial. It is sufficient. where it shows that there was no probable cause for the fire except the company's locomotive, as where it shows that the fire started immediately or soon after one of defendant's engines had passed, and that there was no fire in the vicinity before, and there was no other apparent cause for the fire, especially when taken together with other circumstances tending to strengthen the probability that the fire so originated, such as evidence of

other fires from defendant's engines about the same place and time, the scattering of sparks or coals on the same or other occasions, combustible material on the right of way, and the direction of the wind at the time from the engine toward the property burned. 33 Cyc. 1381-1384; 13 Am. & Eng. Ency. Law (2 Ed.), p. 444; 3 Elliott, Railroads, sec. 1243. (b) That the evidence as to the cause of the fire was substantial and was ample to take the case to the jury, is clear. Under the following cases the question is outside of the field of debate. Kenney v. Railroad, 70 Mo. 243; Kenney v. Railroad, 80 Mo. 578; Redmond v. Railroad, 76 Mo. 550; Otis v. Railroad, 112 Mo. 622; Campbell v. Railroad, 146 Mo. App. 604; Tapley v. Railroad, 129 Mo. App. 88; Fields v. Railroad, 113 Mo. App. 642; Lead Co. v. Railroad, 123 Mo. App. 394; Torpey v. Railroad, 64 Mo. App. 382; Hudspeth v. Railroad, 172 Mo. App. 586; Root v. Railway, 195 Mo. 367; Grand Trunk R. Co. v. Richardson et al., 91 U. S. 454, 471. (c) The mere suggestion of theories by the defense which may or may not have reasonable foundation in the evidence does not reduce the matter to one of speculation, and disqualify the jury to determine the cause, where there is evidence which, although circumstantial, gives reasonable support to the allegations of plaintiff. Wabash S. D. Co. v. Black, 61 C. C. A. 640, 643; Lead Co. v. Railroad, 123 Mo. App. 399; Fields v. Railroad, 113 Mo. App. 648; Tapley v. Railroad, 129 Mo. App. 91; Root v. Railroad, 195 Mo. 364. (d) Defendant makes the misleading implication that the uncontradicted evidence shows the fire started inside the shed, when as a matter of fact the overwhelming weight of the evidence is that the fire started in the combustible material on the right of way. At all events it was established that it originated in the one place or the other from defendant's engine, and it is immaterial whether in the one or the other as regards the jury's right to return a verdict. Root v. Railroad, 195 Mo. 367. (e) Defendant also mistakenly claims that this court should weigh the evidence *pro* and *con.* Equally fallacious is his claim that this court

should pass upon the probative weight of the train sheets, etc., as against the oral evidence.    Even if defendant's proof had been uncontradicted, the court could not have held as a matter of law that plaintiff's prima-facie case had been rebutted.   Kenney v. Railroad, 80 Mo. 578.   (f)   The rule is elementary that on a motion for a directed verdict, defendant's testimony, where contradicted, is taken as false; plaintiff's whether contradicted or not, is taken as true; and discrepancies, contradictions between witnesses or self-contradictions by a witness, together with the credibility of the witnesses and the weight to be given their testimony, are for the jury.   Plaintiff is entitled to the grace of every inference springing reasonably from the proof.   Williams v. Railroad, 257 Mo. 112; Fritz v. Railroad, 243 Mo. 77; Linderman v. Carmin, 255 Mo. 71.   As frequently stated by the courts, "It is only when all reasonable men, in the honest exercise of a fair and impartial judgment, would draw the same conclusion from the evidence on the issue, that it is the duty of the court to withdraw it from the jury."   Roddy v. Mo. Pac. Ry., 104 Mo. 234; Linderman v. Carmin, 255 Mo. 71.   (g)   The rule stated is not affected by the nature of defendant's evidence, and it applies to train records and oral testimony alike. Brooks v. Mo. Pac. Ry. Co., 98 Mo. App. 166; Lead Co. v. Railroad, 123 Mo. App. 398; 4 Wigmore on Ev., sec. 2491; Wigmore on Ev., secs. 1335, 1336, 2453 and notes.

REYNOLDS, P. J.—Plaintiffs, averring ownership of the premises upon which the buildings destroyed had been situated, commenced this action against defendant for damages for the destruction of the buildings by fire. In the petition it is set out that these buildings were near a certain lumber yard owned and operated by the firm of Conway & Proctor (hereafter referred to as the lumber yard), in the city of Monroe; that this lumber yard and its buildings were located and adjacent to the main and switch tracks of the defendant railroad company (referred to for brevity as the Burlington); that on December 26, 1912, the defendant, while running,

operating and controlling a train of cars, the train consisting of an engine and a number of cars, and while running, operating and controlling the train, and while passing through the city of Monroe and near the lumber yard and buildings thereto belonging, carelessly and negligently permitted sparks and coals of fire to escape and be thrown from the engine pulling the train while passing near to and along by the lumber yard and buildings, which sparks and coals of fire set fire to certain buildings and sheds in the lumber yard and that sparks and coals of fire escaped and were blown from the buildings and lumber yard and set fire to other buildings near to and adjacent to the buildings belonging to plaintiffs, from which sparks and coals of fire communicated to the buildings of plaintiffs and set fire thereto and caused the buildings of plaintiffs to be burned and totally destroyed; that the burning and destruction of the buildings belonging to plaintiffs by the fire so communicated and by which the buildings were burned and destroyed, was the direct and proximate result of the sparks and coals of fire escaping from the engine of the defendant, to plaintiffs' damage in the sum of $2990, for which, with costs, judgment is demanded.

The answer was a general denial.

The trial was before the court and a jury, resulting in a verdict in favor of plaintiffs in the sum of $2990, judgment following accordingly. Filing a motion for a new trial and excepting to the action of the court in overruling it, defendant has duly appealed.

At the close of plaintiffs' case in chief and again at the close of all the evidence in the case, defendant interposed demurrers, which being overruled, defendant duly saved exceptions.

Learned counsel for appellant make six assignments of error, but in their printed arguments in chief and in reply, dwell upon four points, namely, that the instruction in the nature of a demurrer to the evidence offered by defendant at the close of all the evidence in the case should have been given, and under this it is argued that the verdict is the result of prejudice and

passion as shown by the fact that the verdict was agreed to by only nine jurors; second and third, that certain paragraphs of plaintiffs' instruction defining circumstantial evidence were erroneous and misleading, and assumed disputed facts to be true, was a comment on the evidence, invaded the province of the jury, singled out the testimony of two witnesses for the plaintiffs, to the entire exclusion of all of defendant's evidence, and was error as a matter of law; and, fourth, that plaintiffs' instruction No. 3, on the measure of damages, was erroneous. In his oral argument before us the learned counsel for appellant confined himself almost exclusively to the point that the demurrer to the evidence should have been sustained.

It is establshed by repeated decisions of our courts, Supreme and appellate, that where a demurrer is interposed to the evidence of plaintiff the demurrer "accepts that evidence as true, whether contradicted or not by defendant's proof, so long as it is not impossible as opposed to the physics of the case or entirely beyond reason. It takes defendant's testimony as untrue where contradicted by plaintiffs' proof. It leaves to the jury to settle the weight due the testimony, the credit due the witnesses and to reconcile contradictions, if any, in proof. So it allows to plaintiffs' case the benefit of every reasonable inference of fact arising on all the proof." That, says Judge LAMM, speaking for our Supreme Court in Division No. 1, in Stauffer v. Metropolitan St. Ry. Co., 243 Mo. 305, l. c. 316, 147 S. W. 1032, is a "trite and good doctrine." This was substantially repeated by the same judge, then speaking for the court *in banc,* in Williams v. Kansas City Southern Ry. Co., 257 Mo. 87, 165 S. W. 788, that learned judge there adding (l. c. 116), when treating of the necessity of substantial evidence to sustain plaintiffs' case, "We say *substantial* evidence, because the 'scintilla' doctrine is no longer the rule in this jurisdiction. It is exploded here as it is in England (Ryder v. Wombell, L. R. 1870, 4 Ex. 31) and as it is as a Federal doctrine (Pleasants

v. Fant, 89 U. S. 116).'' We will apply these rules as the touchstone to the case at bar.

It appears from the testimony of one of the plaintiffs that the improvements on their lot consisted of a granitoid block building sixty by eighty feet, with a twelve-foot side wall, two stories through the middle; also a lumber shed twenty-two by forty-six feet and a coal bin, all of which were destroyed and all built some three years prior to the fire. The lots themselves, this plaintiff testified, were worth from $1250 to $1600, and on the day of the fire the lots and improvements were worth from $4500 to $5000. After the fire the naked lots were worth about $1500, making the value of the buildings destroyed between $3000 and $3400.

Plaintiffs were engaged in blacksmithing, wagon making and in general repair business. Their buildings were south and a little east of the lumber yard, other buildings being between and in the immediate vicinity. The defendant had and maintained a switch track along the north side of the lumber yard and parallel thereto and north of that was its main track; between the lumber yard and the switch track and the switch track and the main track there was grass, other vegetation and combustible material, all testified to have been very dry at the time of the fire. The rails of the switch track were so close to the north wall of the lumber yard buildings that a car had knocked off part of the northeast corner of one of them. The buildings of the lumber yard were all pine; some parts of them had corrugated iron; the walls were old, decayed and more or less rotten and broken in places. The planks on the lumber yard buildngs were set straight up and down; were of white pine, and having been put in green had shrunk, leaving cracks in the walls where one could put a hand or fist through. The length of the lumber yard and its buildings along the right-of-way was about seventy feet. Commencing at the northeast corner of the lumber yard building and at the north wall, was a ten or twelve-foot room, which it subsequently appeared contained a closet; then came a horse stable, with the

manger in front, and immediately against the north wall and about twenty feet west of the northeast corner. Going from east to west along the main track of the railroad and through Monroe City there was considerable up grade from east to west. The premises of plaintiffs were about one hundred and fifty feet from this right-of-way. The day of the fire was rather chilly, the wind high and from the northwest.

One of the plaintiffs testifying, said that he had observed trains passing back and forth frequently on the railroad; had observed freight trains going west coming from the east. Shortly before December 26, the day of the fire, or shortly after, within approximately a week, witness had occasion to observe freight trains going from east to west along by the lumber yard and to observe whether the engine emitted sparks; had noticed on the evening of the 27th or 28th a freight train pulling up that grade, throwing sparks. Witness was then on the street north of the track and on the north side of that street and saw the sparks from the engine clear over the trees on the south side of the track and saw that they came down through the trees on the north side of the street immediately north of the right-of-way, a half block or a short block north. The weather had been so dry that there was no dew or frost at night. Witness had noticed the growth, that is, grass, etc., between the switch track and the lumber yard, and the switch track and the main track, both just before and after the fire. There was some grass and weeds there and some weeds cut with a mowing scythe. The weeds were cut down and lying there on top—some water grass and weeds there—and between the stubble and the building was grass and weeds and scattered trash, such as hay, which had worked out of the horse barn. There was grass all along between the main track and the switch track. Some of the stubble grass was removed after the fire and left the ground more or less loose, and the roots and grass and hay and weeds showed dead where burned over. Witness had seen the fire on December 26th, 1912, about twenty minutes

after noon. It was then burning at the northeast side of the horse barn of the lumber yard. The buildings and contents of the lumber yard were burned to a cinder, as were also a machine shop, a livery barn and all of plaintiffs' buildings, including the blacksmith' and machine shop. Two other barns were burned at the same time. The fire was communicated to plantiffs' buildings from the lumber yard and its buildings, the wind blowing the blaze from the lumber yard to plaintiffs' buildings. The ground of the lumber yard was all burned over; so it was, too, between the switch track and the main track and between the switch track and lumber yard.

Witness further testified he had seen a train passing through Monroe City about ten minutes before he saw the fire; was in his shop that day at the noon hour. There was no noise in the shop, no hands working at the forge or anything, and witness was talking over the telephone. The train came through and whistled and made such a noise that it interrupted his conversation over the telephone; had to stop talking until the train ran further down the line, as he thought far enough that he could talk and he then went ahead and talked to the party. He testified that he saw the train, and it was a freight train, going west. The engine of the train whistled when it came in; seemed to be pulling a pretty fair grade and making "a right smart noise" and "was working steam."

On cross-examination this witness testified that he was positive that the engine of that train whistled; it whistled as it was coming into Monroe. He remembered the fire alarm whistle; it sounded when the fire broke out. He was then in his shop. Repeated that he saw this train going west; did not remember seeing the local pass that day; had seen the train going west over the main track of the defendant road, he presumed, ten minutes before he heard the fire alarm. The train was going at a medium speed, bell ringing, as he thought; could not say whether the train stopped at Monroe City. Asked whether the train was a long or a short one, he

Dawson v. Railroad.

said he had not measured it but explained that he had a place of only about ten or fifteen feet through which he could see it; had not stood and counted the cars as they went by but saw a freight train going west; did not know how many cars were in it or whether it was a long or short train; did not know, at the time, of the arrival of any other freight train that day except from what he had heard; kept no record of the arrival and departure of trains, though he had seen trains arrive.

Another witness testified that the train he had seen about noon of that day was not moving very fast—pulling a pretty heavy drag—a heavy load. The engine seemed to be pulling very hard; seemed to be working steam pretty hard; had seen the Burlington trains during the time he had lived there, something like a year, throw out sparks when passing through Monroe City. Asked if he knew, as a matter of fact, whether or not the engine he had seen pulling the train about noon on the day of the fire, was emitting sparks as it passed through town, witness answered that he thought it was.

A lady, who had been a school teacher for two years, testifying for plaintiff, said she remembered the occasion of the fire on the 26th of December. Just prior to the fire she was coming in from the country; had been to the country with her brother and returned to town about eleven o'clock; drove into town from the south, crossed the Burlington tracks near the mill crossing; drove over to the north part of town and back; crossed on Main street south and to her home in the south part of Monroe City; drove north of the Burlington tracks and came in from the south, going north after they drove uptown; after going north they crossed the tracks again, going south, crossing the tracks on Main street; knew where the Conley & Proctor Lumber Yard was. The crossing on Main street where she crossed the railroad tracks is not very far east of the Conley & Proctor Lumber Yard. She arrived at home that day a quarter of twelve; that was the time by her clock. When she crossed the Main street crossing where she crossed the Burlington tracks she saw a

freight train coming west. It was then east of Main street. The reason it was impressed on her mind was because she had to drive a little fast to get across the track before the train crossed. Witness heard the fire alarm that sounded the day of the fire; that was about twelve or a quarter after by her clock, not long after she returned home. Asked what had first called her attention to the train that she saw coming west, if anything, she answered, "I just saw a train, naturally look down the railroad track when go to cross it." Asked how long after she saw this train she heard the fire alarm, approximately, she said she would judge fifteen or twenty minutes.

On cross-examination this witness said she had heard some whistle at twelve o'clock, which she knew was the twelve o'clock whistle; was getting ready to eat her dinner; was not eating dinner when the twelve o'clock whistle blew but was eating when she heard the fire alarm; had started out from her home to a place in the country between nine and ten o'clock and it was between eleven and twelve when she returned; possibly half past eleven; had stayed out to the place where she went about an hour; went in the house; hunted around for a key to unlock her suitcase, took quite a little while to find that; looked through the suitcase to see if everything was there, locked it up and returned home. It was about an hour and a half from the time she left until she got back.

A witness named Overly testified that on the day of the fire he was hauling cinders. After hauling the cinders he went to the Conway & Proctor lumber yard to clean it out; that was about eleven o'clock; cleaned out the driveway and drove around to the barn and cleaned that out, then went to the east to the other driveway and backed up to the barn. There was a horse in there at the time and some hay and ground feed; cleaned the stable out and quite a bit of hay was in the barn which he threw up. The horse's head was to the west. He threw the feed against the north wall of the lumber yard which made part of the barn. There were

no cracks in the barn but in the fence.   The boards on the barn were placed straight up and down.   The manger or feedway was to the east end of the barn; part of the manger joined the wall, not over six feet long; put in loose hay; threw it up right against the wall; was not a regular hand around the lumber yard then; worked a day now and then but had never been regular. After cleaning out the manger he left there two or three minutes of twelve.   When he got to the Farmers' and Merchants' Bank the bell of the Catholic church, supposed to ring at twelve o'clock, rang; went three blocks west from there and a block south and tied up his team, then went home for his dinner.   His home was about a quarter of a mile from where he hitched his team. After he got home he washed his face and sat down to the table; heard the fire alarm sound just as he sat down to the table; that was twenty-five minutes after twelve o'clock by his clock.   While he was in the lumber yard witness saw a man in the barn.   He came in with his team and witness drove up to let him pass; thought that man left before he (witness) did.   Asked if there was anyone in or about the lumber yard or barn when he was there cleaning out the manger, witness said there was a boy there named Johnson, who was in the shed when he went out but he disappeared and witness saw no more of him.   While he was there witness cleaned the shed and went around the barn and cleaned that out; cleaned all over the shed and the driveway.   No one that he saw was about the barn after he went there and until after he left; had no matches, pipe or anything of the kind about him; did not carry a pipe. When he heard the fire alarm witness testified that he said to his wife that that would "be loaded on" him, and he searched his pockets and found no matches or anything of the kind; did not carry matches unless going out to the farm.

On cross-examination witness testified that he was in the barn at the lumber yard about half an hour; went there somewhere between eleven and twelve and left there two or three minutes of twelve, fixing that time

by the whistle or bell of the church; went from the
barn three blocks and a half west and a block and a half
south, tied up his team, and walked home, about a quar-
ter of a mile, and directly after he got home and had
washed up, heard the fire alarm whistle; had been in the
barn thirty or forty-five minutes or more.     There
was a closet in the barn in the east end which
was used promiscuously by people.  Commencing at the
northeast corner of the .barn for the first eighteen feet
was the regular side of the barn.   The picket fence com-
menced at the west end of the barn; something like
eighteen feet from the northeast corner it was boarded
up with boards.   There was no opening in the boards
on the north side of the wall, no cracks.   When in the
barn witness was within fifty or sixty feet of the main
track of the Burlington, was from four to six feet from
the outside of the wall, and the right-of-way is sup-
posed to be fifty feet; saw no train as he came up there,
nor while he was there, nor as he went away.

On re-direct examination witness testified that he
thought he heard a train at one time but saw none.
There was no fire at the barn when he left; if there had
been he would have put it out; just as positive of that
as he was that he was sitting there.

On recross-examination witness said that he thought
once he heard a train whistle; had stayed at the barn
ten minutes after that and saw nor heard no train go
by after that; is sure he did not see a train go by the
barn after he heard the twelve o'clock whistle.

On re-direct examination witness testified that he
was on the outside of the barn gathering up some trash
when he thought he heard a whistle and when he heard
the twelve o'clock whistle or bell he was up at the
Farmers' & Merchants' Bank going home.

Again cross-examined, he testified that he saw no
fire out on the right-of-way while he was there; even if
he had not seen the fire he could have detected the smoke
that close to him.

On re-direct examination he said that the boards in
the barn were so tight that he could not have seen a

fire on the right-of-way, but he could through the fence, as it was only six feet high; repeated that he did not see or hear a train as he left the barn going away. This witness appears to have been the last person in the barn immediately before the fire.

Three boys testified that on the day of the fire they were in the road in front of one Haskins' house. Haskins lived north of the Burlington and about one hundred yards west of Main street. During the noon hour they were playing foot ball between the lumber yard and the side yard; were kicking the ball from one to the other; had a clear view of the Burlington tracks; it was vacant ground between them and the tracks. All testified that they saw a train pass through Monroe City that day, about ten or twenty minutes to twelve o'clock, a freight train, going west. The train did not stop at Monroe; could not say whether it was going fast or slow; did not know whether it was working steam. All saw the fire that day; were attracted to it by the smoke and heard the fire alarm; heard the fire-whistle just a little before they saw the smoke; from where the boys were kicking the foot ball they could see part of the lumber yard. When they got to the fire it was burning in the horse stall in the northeast corner, the roof of the shed of the lumber yard had also caught fire. One of the boys had kicked the foot ball over toward the train and they thought it was going under the train and went over there near the train and one of them went after it and picked it up; could see the ball and the train at the same time. There was a space of about ten or twelve feet between the ball and the train. The train was then passing along the track. It is due to defendant to say that another boy, playing with these three, said the hour they were playing foot ball that day was between nine and ten o'clock in the forenoon and the only train he saw was the local, which then pulled in.

Two other witnesses testified to seeing the boys playing foot ball that day, placing the time at about noon and testifying that they saw a freight train then pass.

A witness described the premises of the lumber yard in the fall of 1912; had been working around that vicinity and observed trains in passing; that was in threshing time, a little earlier than threshing time. The train he noticed as he was working on his threshing engine was a freight train, going west on the Burlington road. Asked what, at the time he was speaking of working on his threshing engine when the train passed, he had observed as to its emitting sparks, witness stated that he remembered one time especially, as the train came up there were pulling very hard and working steam, seemed, like full capacity, and the cinders and sparks were falling fast and thick all around and some of them fell on top of a gunny sack, part of the cover of his engine, and set it on fire. This, he said, referred to a freight train. Witness testified that he remembered another time when there was some trash set on fire immediately between the lumber yard and the shop. On cross-examination witness said that the time the gunny sack caught fire was not the 26th of December, the day of the fire in question.

The wife of a Dr. Scobbee, then living in Monroe City, testified that she remembered the time of the fire in December; was at her home that day and saw a train pass on the Burlington track; "saw lots of trains," said the witness. On that day she was sitting by the window during the morning; her husband was not at home and she did not have to get dinner, and had been sitting by the window almost all morning; saw a train pass over the Burlington near noon that day, judged it was twelve, or twelve or fifteen minutes past twelve that noon; it was a freight train going west. It was a cold, dry day and the wind was blowing from the northwest to the southeast, a strong wind; saw the fire before the alarm was sounded; saw it some fifteen or twenty minutes after she had seen the train pass. She had gone to the kitchen and left her child at the window; the child called her and she went back to the window and saw the fire, which was then at the northeast corner of the lumber yard, a little west of the northeast corner, and close up to the

wall of the lumber yard and on the outside of the wall. The fire was burning in the grass between the track and the lumber yard. When the fire alarm was sounded she was on her way to the fire. Witness could not say whether the engine she had seen pass about noon emitted smoke or sparks or tell anything about the length of the train; had not counted the cars; from her place she could just see a train as it goes through where she gets a view of it.

On cross-examination the witness testified that she had frequently gone across the railroad right-of-way and observed that it was covered with weeds and grass and she described the locality. The time between seeing the train pass and seeing the fire was from fifteen to twenty minutes, and between seeing the fire and the blowing of the fire whistle she had enough time to get her own wraps and the baby's wraps and hunt for the baby's cap; did not know how long it was; hardly thought it was twenty minutes. After she got the baby's cap she went right across to the fire, though not directly to it; thought the train that she saw going past had fifteen or twenty cars; thinks she noticed the engine but did not notice the caboose.

Two other witnesses testified that they first saw the fire outside of the fence, one of them saying it was outside the fence, between the railroad and lumber yard.

Over twenty-five or more witnesses for plaintiffs testified to seeing or hearing a freight train pull past the lumber yard about noon on the day of the fire.

We have set out rather fully the testimony of one of the plaintiffs, and of the school teacher, and of Mrs. Scobbee, as indicating the line of cross-examination pursued as to all of plaintiffs' witnesses, in testing the accuracy of their testimony and means of knowledge, as it affords a fair sample of the line of cross-examination followed as to all of plaintiffs' witnesses. While showing some inconsistencies as to details, all, however, testified in the most positive manner to having seen a freight train pull through on defendant's track at Monroe

197 M. A.—13

City on the 26th of December, 1912, at about noon. That was plaintiffs' case in chief.

On the evidence in chief there can be no question as to right action by the learned trial court in overruling the demurrer interposed by the appellant to that testimony. There was substantial evidence produced by plaintiffs, sufficient to take their case to the jury. It is true that defendant introduced the testimony of many reputable citizens to the effect that they had neither seen nor heard any train passing west over the line of the defendant's road at about noon on the day of the fire. It is also true that a number of those witnesses testified that the fire had not originated in the grass and trash on the outside, to their knowledge, but that when they first saw it it was in the building or going up its outer walls, several of these witnesses claiming that they had seen the fire at its inception. But, as said by our Supreme Court in the cases we have cited and quoted above, on a demurrer interposed to the evidence of plaintiff, that demurrer "accepts that evidence as true, whether contradicted or not by defendant's proof, so long as it is not impossible as opposed to the physics of the case or entirely beyond reason." We most certainly cannot say that the testimony introduced on the part of plaintiffs was impossible or entirely beyond reason, nor that it is opposed to the physics of the case.

This last proposition is earnestly insisted upon, in effect, by the learned counsel for appellant in their exceedingly elaborate brief and argument. There those counsel contend that the documentary evidence which they introduced, and which they claim are public documents, required by the Interstate Commerce Commission to be kept by interstate railroads of the movements of trains, in a measure constitute physical facts, or at least controlling evidence which we as an appellate court can accept as against the verdict and judgment, arguing that "when the testimony is in the form of documents, the advantage which a jury is supposed to have over an appellate court in passing upon the evidence does not exist." The documents referred to are called "Block

Sheets.'' Counsel cite for this the decision of the Springfield Court of Appeals in Neil v. Cunningham Store Co., 149 Mo. App. 53, l. c. 58, 130 S. W. 503, and cases there cited. The decision of the Springfield Court of Appeals in that case is not controlling, as it was subsequently held by our Supreme Court that the Springfield Court of Appeals had no jurisdiction over the case. The case came to us for consideration after being sent back from the Springfield Court of Appeals, and in Neil v. Cunningham Store Co., 160 Mo. App. 513, l. c. 518, 140 S. W. 947, we held that the verdict of a jury is conclusive upon the appellate court in an action at law and that this is so whether the testimony produced at the trial was given orally or by way of depositions.

As bearing on the probative force of these ''block sheets,'' it is said by the Supreme Court of the United States in Caha v. United States, 152 U. S. 211, l. c. 222, that courts will take judicial notice of the orders of the Interstate Commerce Commission requiring such block sheets or records to be kept. But that is far from holding them conclusive. At most, if properly authenticated, they would be prima facie evidence.

In Brooks v. Missouri Pacific Ry. Co., 98 Mo. App. 166, 71 S. W. 1083, considering the effect in evidence of the testimony of the train dispatchers and their records, showing the movements of trains, where in that case the train dispatchers had testified that no trains whatever had gone over the railroad without their orders and that there was no order for any train over the railroad at the time in question, except the regular passenger train mentioned, and that their records and those of the conductors showed no such other train, the Kansas City Court of Appeals said (l. c. 175): ''The evidence thus introduced was sufficient to convince any reasonable mind, unaccompanied with suspicion as to the good faith with which it was offered, and without any contradictory testimony, that no freight train passed over defendant's road at the time in question after the passage of the regular passenger train. That was just its value, and no more. It is not in the nature of phys-

ical facts, which the courts and juries are bound to recognize and nothing can overturn as evidence. It is not probable, but it is possible, for a train dispatcher and his records to be in error, and for the reason of their apparent trustworthiness they should have great weight, but it does not therefore necessarily follow that the courts are authorized to say that such evidence completely overthrows other evidence which in the opinion of such courts is of less convincing character.''

In Big River Lead Co. v. St. Louis, I. M. & S. R. R. Co., 123 Mo. App. 394, 101 S. W. 636, our court, passing on the effect of evidence of like character, that is of the records or sheets showing the movements of trains, said (l. c. 398) that it was ''competent evidence.'' That, too, is far from saying that it was conclusive, or of the force and effect of a physical fact.

Those same counsel say in concluding their argument: ''Without amplifying and burdening the court with a further argument on the matter, appellant submits that the record evidence introduced by it in this case absolutely destroys the contention of the plaintiffs that a train passed through Monroe City at about noon on December 26, 1912.'' But that was the very question the jury determined otherwise. It is further said by the same learned counsel that the respondents do not attempt to impeach or discredit these records except by insinuation and appeals to prejudice in their argument before the jury. If such appeals were made they are not before us.

Our statute (section 3151, Revised Statutes 1909) under which this action is brought, provides that every railroad corporation owning or operating a railroad in the State, shall be responsible in damages to every person or corporation whose property may be injured or destroyed ''by fire communicated directly or indirectly by locomotive engines in use upon the railroad.'' This has been the law of our State for a long while and under it many cases have arisen and been before our courts. One of the most carefully considered of the earlier cases construing the statute is that of Campbell v. Missouri

Pac. Ry. Co., 121 Mo. 340, 25 S. W. 936, where the constitutionality of the statute was attacked, it being claimed that the unconstitutionality consisted in allowing a recovery without proof of negligence on the part of the railroad company. There the petition, while stating all the facts necessary to authorize a judgment as in the case at bar, also contained allegations of negligence. Of that our Supreme Court, holding that under the statute it was not necessary to allege negligence, said (l. c. 348): "By the statement of more than was required, plaintiff did not forfeit his right to recover upon proof of the facts he was required to state, and did state, in his petition."

It was further held in that case that it was competent for witnesses to testify that other fires, both before and subsequent to the one in question, had occurred at different places upon the line of defendant's road and which had been started by sparks from some of the defendant's engines. That occurred here. Further along, in the opinion it is said (l. c. 350) and applicable to this case, that the evidence "tended to prove the possibility, and consequently probability, that the fire was communicated to plaintiff's property from one of defendant's engines;" and where the fact as to whether the fire originated from the engine, was alone in issue, and there was no direct proof of the fact, the court said: "It seems very clear that such evidence would have some tendency to prove that issue. The evidence was all circumstantial, and the facts testified to were circumstances, though slight they may have been, bearing upon the issue." To like effect see Matthews v. Missouri Pac. Ry. Co., 142 Mo. 645, l. c. 656-657, 44 S. W. 802.

In Big River Lead Co. v. St. Louis, I. Mt. & S. R. R. Co., supra, Judge GOODE, speaking for our court, has said (l. c. 400):

"A bare possibility that sparks from an engine on defendant's line might have kindled the fire, would not, it seems to us, justify a finding that it was thus kindled, though authoritative opinions appear to hold it would. We think the testimony ought to go to the extent of prov-

ing the probable origin of the fire was cinders or sparks emitted from an engine. But we need not decide as to whether a possibility suffices to carry such a case to the jury, for a probability was shown in the present case by evidence tending to prove there was no other cause for the fire. . . . This circumstance, and the facts that said barn was nearest to the railroad, that the wind was then blowing from the railroad toward the barn and that the fire was discovered in a few minutes after the passage of the last train, and not long after the other two had passed, are of weight in showing a locomotive was the source of the fire." It was there held that in cases where there is like proof, the question of the origin of the fire is for the jury.

In Markt v. Chicago, B. & Q. R. R. Co., 139 Mo. App. 456, 122 S. W. 1142, the Kansas City Court of Appeals said, referring to the facts in case (1. c. 463):

"The probability is that the fire could have been communicated in no other way than from sparks emitted from defendant's engine unless it was set by plaintiff himself. According to his statements he had just previous to its discovery examined the building and there was no evidence of fire anywhere except in the furnace which had been banked. . . . The evidence of the most positive character tends to prove that the fire could have originated in no other manner. The process of reasoning by excluding every other means by which the fire could have been started, tends to support the theory that it was by means of sparks thrown out by defendant's engine."

Several cases are cited by Judge BROADDUS, who wrote the opinion in that case, in support of this.

These cases are peculiarly applicable to the case at bar. One of the witnesses, testifying, and he appears to have been the last person in the building before the fire was discovered, testified most positively that there were no signs of fire in there when he left the building and that no one was in there when he left; that he had no matches with him; had used none; had on that occasion, no pipe; was not smoking. The fire broke out shortly

after he left. Unless this fire originated from sparks thrown by a passing locomotive, carried by a strong wind from the north and over the premises, it is impossible to account for it on any possible theory. With all their skill, ability and ingenuity, learned counsel for appellant suggest no tenable theory for the origin of the fire. But that there was a fire, that it occurred directly after the passing of a freight train, laboriously pulling up grade, hauling a number of freight cars, is testified to by an overwhelming number of witnesses, not one of whom it was even attempted to impeach for veracity or character. As we think, there is sufficient substantial evidence to show that the fire originated in the dry grass and vegetation between the tracks of the defendant road and the walls of the building of the lumber yard, and was started by sparks from a passing engine of the appellant.

The authorities on the subject of fires on railroad tracks are so fully compiled by my learned associate, Judge ALLEN, in Hudspeth v. St. Louis & S. F. R. R. Co., 172 Mo. App. 579, l. c. 586, 155 S. W. 868, and there reviewed by him that it would be a work of supererogation to attempt to cite or repeat them. We think that an examination of them lends sufficient authority to sustain the verdict of the jury as to the origin of this fire. [See, also, Vandeburgh v. St. Louis & S. F. R. R. Co., 146 Mo. App. 609, 124 S. W. 563.]

The second, third and fourth points, made by learned counsel for appellant have been duly considered. We do not think any of these go to the merits of this case.

The instruction on the measure of damage is complained of, which was said to be the damage to the real estate. That was more favorable to the appellant than it was entitled to have.

It is claimed that prejudice appears in the amount of the verdict and in the fact that but nine jurors signed it. The verdict, as to amount, is well within the uncontroverted and unchallenged evidence. The verdict of nine jurors is as conclusive as one by twelve.

It is true that in their brief submitted by counsel for respondents, attention is called to the fact that in producing the records of the movements of trains the "block sheets," as they are called, made at Withers Mill and Lakenan, the former about eleven miles west of Monroe City, the latter on the branch of defendant's road running from Hannibal to Palmyra Junction, points east of Monroe City, were not in evidence but accounted for as having been lost, and that Withers Mill is the only station between Hannibal and Palmyra Junction at which block sheets are made. The absence of these sheets was a proper matter of comment, if made, and probably did have some significance in the mind of the jury.

Applying sections 1850 and 2082, Revised Statutes 1909, of which sections the writer takes the view announced by Judge GRAVES in his concurring opinion in Trainer v. Sphalerite Mining Co., 243 Mo. 359, l. c. 374, 148 S. W. 70, to reverse and remand this case even for the errors said to be in the instructions, and which errors do not go to the substantial rights and to the real merits of the controversy, would not be conducive to the due administration of justice.

The judgment of the circuit court is affirmed. *Allen* and *Becker, JJ.,* concur.