DAVID A. TATE, Respondent, v. ST. LOUIS & SOUTHWESTERN RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals. Opinion Filed March 4, 1919.

1. **RAILROADS: Fires: Evidence: Circumstantial Evidence: Sufficiency.** In an action, under section 3151, R. S. Mo. 1909, against a railroad company, to recover the value of a dwelling house, etc., which were destroyed by fire, and which were alleged to have been set on fire by a spark or burning cinders emitted by a locomotive engine operated upon defendant's railway tracks near by, and the evidenced adduced to establish the ultimate fact that the house was set on fire by a spark or live cinder or ember emitted by a passing locomotive is entirely circumstantial, *held* that the competent evidence adduced sufficed to warrant a finding by the jury that the fire originated in such manner.

2. ——: ——: ——: ——: ——. Direct testimony that the house was set on fire by a spark or live cinder or ember

emitted by a passing locomotive is not essential, but the probable origin of the fire may be shown by circumstantial evidence, provided the circumstances relied upon are consistent and tend in a substantial way to support the claim and make it probable and justify a reasonable inference that the fire originated from sparks thrown off by defendant's engine, and also make it appear to be improbable that the fire could have originated from any other source.

3. ———: ———: ———: **Previous Fires: Remoteness.** In such action where the evidence as to other fires in the vicinity referred to by the witnesses were isolated fires occurring approximately two to four years prior to that complained of, *held* inadmissible as too remote.

4. ———: ———: ———: ———. Evidence that other fires were set off by sparks from defendant's engine may be admissible, as tending to make it appear probable that the fire in question was so started, but such evidence should be confined to fires occurring reasonably near the time of the fire complained of, unless a series of continued occurrences be shown.

5. **EVIDENCE: Competency: Hearsay.** In an action against a railroad company, under section 3155, Revised Statutes 1909, to recover the value of a dwelling house, etc., which were destroyed by fire alleged to have been set on fire by a locomotive engine operated upon defendant's railway tracks near by, a voluntary statement of plaintiff to the effect that the engineer said that he pulled the train that burned plaintiff's house was incompetent

Appeal from the Cape Girardeau Court of Common Pleas.—*Hon. Robert G. Ranney,* Judge.

REVERSED AND REMANDED.

*Daniel Upthegrove, John R. Turney* and *Wammack & Welborn* for appellant.

(1) The evidence in this case is not sufficient to support the verdict of the jury and the court should have sustained the demurrer to the testimony offered by the defendant at the close of the plaintiff's case and again at the close of the whole case. Manning v. Railway Co., 137 Mo. App. 631; Fritz v. Railway, 243 Mo. 62; Bowden et al. v. St. Louis-San Francisco Ry., 175 S. W. 252, 189 Mo. App. 148; Gibbs v. Railway, 104

Mo. App. 276; Peffer v. Mo. Pac. Ry., 98 Mo. App. 291; Peck v. Railway, 31 Mo. App. 123; Bank v. Railway, 98 Mo. App. 330; Funk v. Railway, 123 Mo. App. 169; Glick v. Railway, 57 Mo. App. 97. (2) The court erred in permitting plaintiff to offer the evidence of other fires. Hodges v. Hill, 175 Mo. App. 448; Calcaterra v. Lovaldi, 123 Mo. App. 351; Goble v. Kansas City, 148 Mo. 470; Smart v. Kansas City, 91 Mo. App. 594; Golden v. Railway, 84 Mo. App. 59. (3) The court erred in refusing to strike out the statement of plaintiff, David Tate, that a trainman told him, "I am the man that pulled the train that burned your house." Landers v. Railway, 134 Mo. App. 80; Barker v. Railway, 126 Mo. 148; Wojtylak v. Coal Co., 188 Mo. 290; Redman v. Railway, 185 Mo. 12; Frye v. Railway, 200 Mo. 405; Dudley v. Railway, 171 Mo. App. 660; Roe v. Bank of Versailles, 167 Mo. 426; Hamburger v. Rinkel, 164 Mo. 407; McFall v. Railway, 181 Mo. App. 150; Burns v. Railway, 24 Mo. App. 10. (4) The court erred in giving to the jury instructions Nos. 3 and 4, because these instructions authorized the jury to find for the plaintiff for the full value of the buildings and their contents if the said buildings and their contents or any part thereof were destroyed by fire. Notwithstanding the fact that part of the contents of the buildings were saved from the fire. Fowler v. Burris, 186 Mo. App. 347; Sherwood v. Railway, 187 S. W. 260; Gulath v. St. Louis, 179 Mo. 38; Turner v. Haar, 114 Mo. 347. (5) The verdict of the jury is excessive. (6) The verdict of the jury is indefinite and not sufficient as the basis of a judgment. It cannot be told from the verdict what amount the jury found in favor of the plaintiff. Newton v. Railroad, 168 Mo. App. 199; Hayes v. Hogan, 180 Mo. App. 237; Stepham v. Railroad, 199 S. W. 273. (7) The final judgment does not follow the verdict and is also indefinite and insufficient.

*K. C. Spence,* for respondent.

(1) The evidence in this case is amply sufficient to support the verdict of the court and jury and should

not be disturbed. Earhart v. Wabash, 136 Mo. App. 617; Hudspeth v. Frisco R. R. Co., 172 Mo. App. 579; Fields v. Railway, 113 Mo. App. 643; Tapley v. Railway Co, 129 Mo. App. 88; Wright v. Railroad, 107 Mo. App. 209; Torpey v. Railroad, 64 Mo. App. 382; Campbell v. Railroad, 121 Mo. 342; Mathews v. Railroad, 142 Mo. 645; Kenney v. Railroad, 70 Mo. 243; Lead Co. v. Railway, 123 Mo. App. 394; Gibbs v. Railroad, 104 Mo. App. 280. (2) The court did not err in permitting plaintiff to offer the evidence of other fires. Etna Ins. Co., v. Mo. Pac. 123 Mo. App. 513; Lead Co. v. Railway Co., 123 Mo. App. 394; Campbell v. Railroad, 121 Mo. 340. (3) Plaintiff, David Tate's statement as to what engineer Arthur Bennett, said to him, to-wit: "I am the man that pulled the train that burned your house" —or—"I was pulling the train they said that burned your house," should not have been stricken out for the evidence shows that Bennett was the engineer operating engine No. 95, that passed respondent's house on the day same was burned at about 12:35 p. m. and about ten or fifteen minutes before the fire was discovered. He probably knew what he was talking about. At most it was invited error upon the part of appellant and it should not be permitted to take advantage of its own wrongs for the reason attorney for appellant brought out such facts on cross-examination of witness Tate. (4) Instructions complained of will not bear the construction placed upon them by appellant. Mathews v. Railroad 142 Mo. 645; Lead Co. v. Railroad 123 Mo. App. 394. (5) The verdict of the jury is not excessive. The evidence shows respondent was damaged much more than the judgment of $1800 he obtained. It being $285 less than the amount sued for. (6) The verdict of the jury fully disposed of the issues submitted to them, to-wit, the amount of damage sustained, if any, by plaintiff, and a judgment rendered in his favor for the sum of $1800. While their verdict may differ in some respects to the usual and customary wording of such verdicts, it was a trial and a finding upon the issues submitted to them and is fully justified by the evidence

and should not be disturbed.    Secs. 1853, 2080, R. S. 1909.

ALLEN, J.—This is an action under section 3151, Revised Statutes 1909, to recover the value of a dwelling house, and of household goods and other property situated therein, and a smoke-house, cellar-house and milk-house, and the contents of these, belonging to plaintiff, which were destroyed by fire on September 18, 1914, and which are alleged to have been set on fire by a spark or burning cinders emitted by a locomotive engine operated upon defendant's railway tracks nearby The trial, before the court and a jury, resulted in a verdict and judgment for plaintiff, and the defendant appeals.

Plaintiff's dwelling house, and the adjacent structures destroyed by fire, were situated a short distance north of defendant's station at Idalia, in Stoddard County, Missouri, west and north of defendant's tracks; the railroad tracks at this place extending approximately northeast and southwest.  The house faced north upon a wagon road, but being built in the shape of the letter "T," the extention at the rear thereof was nearest to the railroad track.  This rear portion of the building contained a kitchen, and also a small room, referred to as the clothes room or dressing room, and a porch, all under the same roof; this small room and the porch being on the east side of this part of the building, facing the railroad track.

The evidence shows that plaintiff's dwelling house became ignited, on the day mentioned, shortly after noon, i. e. between 12:30 and 1:00 P. M., within a few minutes after a freight train upon defendant's road had passed the place going north.  At this point defendant's track, it is said, has some upward grade to the north; and there is testimony that this passing freight train was "pretty heavily loaded," and that the engine appeared to be "pulling heavy."  The weather was exceptionally dry, and a strong wind was blowing from the east or southeast.

The testimony in behalf of plaintiff is to the effect that upon the day of the fire plaintiff and his family ate their noonday meal earlier than usual, about 11:30 A. M., and that plaintiff and his son went "down the railroad track," on their way to their work, and sat down for a time "on the old track;" and that while they were sitting there a freight train passed going north; that after the train had passed perhaps ten or fifteen minutes they heard a bell ringing at the house and discovered that the building was on fire. According to their testimony the fire, when they discovered it, was on the roof of the rear portion of the house above the window of the small room mentioned above, near the point where this room adjoined the porch; that it had "burned a little circle" in the roof at this place, which was not far from the eave of the roof and about twelve feet from the kitchen chimney which extended through the ridge or comb of the roof. The distance from the window mentioned to the nearest point of the railroad track was, it is said, about 269 feet. It appears that the house burned rapidly, and that the adjacent buildings mentioned took fire and were also quickly consumed; though some of the contents of the house were saved.

A number of witnesses other than plaintiff and his son testified as to the fire, but none of them saw it until after it had gained some headway. There is testimony that the high wind from the east or southeast, carried burnt shingles or other burnt material from the house to a great distance, some thereof as far as a mile. And one witness for plaintiff testified that he saw "coals" from the burning building which had been carried half a mile.

No witness saw any sparks or live cinders thrown out by the engine drawing the freight train which passed plaintiff's house shortly prior to the fire. There is some testimony, however, tending to show that sparks or live cinders from defendant's engine, in passing this place, had been carried as far as plaintiff's house. In the course of his testimony, plaintiff said: "I have

observed fire fall from passing engines over at my house before.'' When this occurred, if it did, does not appear. On cross-examination plaintiff said: ''I don't know that I ever saw a cinder fall on my house, I have felt them hit my hat.'' There is testimony of other witnesses that upon previous occasions fires had started in plaintiff's garden and orchard, at distances as far from the railroad as was plaintiff's house, shortly after a train had passed, without other showing as to their origin. Plaintiff's son, Albert Tate, testified, over defendant's objection, that he had seen such fires in the garden twice and in the orchard ''a time or two,'' ''about three years'' prior to the trial which took place in January, 1916; and that more than once cinders had fallen upon his hat while in his father's yard, but that he could not say ''whether they were live cinders.'' Over defendant's objection also, a daughter of plaintiff testified that in 1912 she saw such fires start in plaintiff's orchard and garden, farther from the railroad track than was plaintiff's house, and that the fire in the orchard occurred shortly after a train passed. And another daughter of plaintiff, over defendant's objection, testified in regard to a previous fire in plaintiff's garden which she said occurred about four years prior to the trial, and which was discovered ten or fifteen minutes after a train had passed; and that ''a year or two'' later similar fires occurred on the same day both in plaintiff's garden and in his orchard.

A witness for plaintiff, one Hooper, testified, over defendant's objections, that about five years prior to the trial, while he was working at ''Nomes Spur,'' about a mile and a half from plaintiff's house, a certain pile of sawdust, situated as far from the railroad track as was plaintiff's house, frequently was found on fire ''after a heavy train would pull that grade.''

The testimony for plaintiff tends to show that there had been no fire in or about defendant's house on the day in question except that in the stove in the kitchen, which was used to prepare the noonday meal; and the

testimony is that there had been no fire in this stove after 11:30 A. M. And plaintiff testified that he had inspected the kitchen flue shortly prior to the fire and found it in good condition.

The testimony for defendant tends to show, among other things, that the engines operated upon the road were equipped with spark arresters; that the engine which passed plaintiff's house a few minutes prior to the fire was so equipped, and that it was inspected both on the day prior to the fire and the following day. and the spark arrester, and the engine generally, found to be in good condition upon both inspections.

## I.

It is argued for defendant, appellant here, that the evidence adduced by plaintiff failed to make out a prima-facie case, and that defendant's demurrer to the evidence should have been sustained. It is true that the evidence adduced to establish the ultimate fact that the house was set on fire by a spark or live cinder or ember emitted by the passing locomotive is entirely circumstantial, as is usual in such cases; but we are of the opinion that the competent evidence adduced sufficed to warrant a finding by the jury that the fire originated in this manner. Direct testimony of this ultimate fact is not essential. "The probable origin of the fire may be shown by circumstantial evidence, provided the circumstances relied upon are consistent and tend in a substantial way to support the claim of plaintiff, and make it probable, and justify a reasonable inference, that the fire was caused by sparks from defendant's engine." [Hudspeth v. Railroad, 172 Mo. App. 579, l. c. 585, 586, and cases there cited, 155 S.W. 686.] "And where the circumstances reasonably justify the inference that the fire originated from sparks thrown off by the defendant's engine, and also make it appear to be improbable that the fire could have originated from any other source, then clearly the plaintiff's case is sufficiently made." [Hudspeth v. Railroad, supra, l. c. 586, and cases cited.]

The evidence tends to show that the fire originated upon the roof of the building facing the railroad track, shortly after the passing of a heavily loaded freight train pulling heavily, up grade, at a time when a very high wind was blowing from the railroad track toward plaintiff's house, and at an exceedingly dry period when conditions were highly favorable for setting out a fire in this manner. And it does not appear that competent evidence is wholly lacking, as appellant argues, to prove the possibility of such fire being started, under such circumstances, by sparks or live cinders thrown off by defendant's engine at the distance mentioned. Without reference to the other testimony adduced touching the matter, there is the testimony of plaintiff to the effect that he had previously observed "fire" fall from passing engines at his house—evidently meaning that he had seen live sparks or cinders fall there from passing engines. We cannot say that this evidence is wholly lacking in probative value. Furthermore, the evidence, we think, tends to make it improbable that the fire upon this roof originated from any other source, since it tends to show that the fire did not originate from the cook-stove, or the kitchen flue. The evidence tends to negative the idea that sparks or embers were coming from the chimney; and the strong east or southeast wind would have carried any such spark or ember away from and not upon the portion of the roof where the fire is said to have originated.

In view of the facts and circumstances in evidence, we think that the court did not err in overruling the demurrer.

## II.

Appellant assigns as error the admission of the testimony regarding other fires said to have started in plaintiff's orchard and garden approximately two or three years prior to the fire here in question, and that of the witness Hooper in regard to the starting of fires in a pile of sawdust, nearly four years prior to the

fire in question, at a point on defendant's road a mile and a half from plaintiff's house. The testimony regarding these fires, we think, should not have been admitted under the circumstances. It is true that evidence that other fires were set out by sparks from defendant's engines may be admissible, as tending to make it appear probable that the fire in question was so started. [Campbell v. Railroad, 121 Mo. 340, 25 S. W. 936; Matthews v. Railroad, 142 Mo. 645, 44 S. W. 802.] But such evidence, we think, should be confined to other fires occurring reasonably near the time of the fire complained of, unless a series of continued occurrences of this sort be shown. The evidence here in question, we think, is too remote, since the other fires referred to by the witnesses were isolated fires occurring approximately from two to four years prior to that complained of. There is no showing as to the appliances used by defendant on its engines at the times when such are said to have occurred; and such fires may have occurred, if at all, under circumstances quite different from those present on September 18, 1914. We know of no authority to justify us in holding that evidence alone of isolated fires occurring so long prior to that in question is admissible as tending to prove the ultimate fact in issue. The authorities which we have found on the subject are to the contrary. [See Dillingham v. Whitaker, et al., 25 S. W. 723; Galveston, etc., Ry. Co. v. Rheiner, et al., 25 S. W. 971; L. & N. R. R. Co. v. Miller, 109 Ala. 500; 33 Cyc., pp. 1371, 1372; Davidson v. St. Paul, etc., Ry. Co., 34 Minn. 51; Henderson v. Railroad Co., 144 Pa. St. 461.]

Whether the testimony in question was inadmissible on the ground that it appeared, if at all, only by inference that such former fires were set out by sparks from an engine on defendant's road, we need not say.

## III.

On cross-examination plaintiff testified that after the burning of his property he endeavored to ascertain the number of the train which had passed just prior to

the fire; and that on the following Sunday he talked with a "trainman" in regard to the matter. When asked, by defendant's counsel, if this man told him the number of the train, plaintiff said: "He told me the number, but I don't recall. He said 'I am the man that pulled the train that burned your house.'" Defendant moved to strike this out, but the court refused to do so, defendant excepting. The engineer, who was in charge of the engine that passed plaintiff's house shortly prior to the fire, and who had this conversation with plaintiff, testified, as defendant's witness, in regard thereto, stating that he merely told plaintiff that he "passed there that day." On cross-examination plaintiff's counsel asked the witness: "At that time did you say anything to him about pulling the engine that set his house on fire?" Thereupon the court said: "They object to that last question because it is hearsay conversation." And the question was not answered. Appellant's counsel stated that he excepted "to the attorney asking that question."

We are of the opinion that the voluntary statement of plaintiff to the effect that the engineer said that he "pulled" the train that burned plaintiff's house, was wholly incompetent; and that the court ought to have promptly stricken it out and told the jury to disregard it. Not only was it allowed to stand, but the matter again brought to the attention of the jury on the cross-examination of the engineer. And under the circumstances we cannot well hold that this was harmless or nonprejudicial error. As said, plaintiff's case was one depending purely upon circumstantial evidence; and in view of the character of the testimony adduced by defendant we think that to permit the plaintiff to throw into the scales this incompetent testimony was prejudicial to defendant.

## IV.

Complaint is made of an instruction for plaintiff on the measure of damages; and it is argued that the

verdict is, in any event, excessive. But under the circumstances these matters need not be discussed.

The verdict of the jury, signed by nine jurors, is not in good form, due evidently to the fact that the court did not instruct the jury as to the form of their verdict. Whether the verdict is so indefinite in amount as to warrant a reversal on this ground alone, we need not say.

It follows that the judgment must be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Becker, J.,* concur.